COMMONWEALTH *vs.* DONALD CAVANAUGH.

Bristol.    March 1, 1976. — September 7, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights, Due process of law.  *Waiver.  Practice, Criminal,* Assistance of counsel, Continuance, Judicial discretion, ,Disclosure of evidence before grand jury, Security measures in court room.

Denial of a motion for a continuance in a criminal case was arbitrary and violated the defendant's right to effective assistance of counsel and to due process of law where it appeared that court-appointed counsel had insufficient time to prepare a defense and that in denying the motion the judge had made erroneous assumptions of fact. [50-53]

Where a defendant "fired" his court-appointed counsel prior to trial because counsel was unprepared to represent him and was forced to proceed pro se with the appointed counsel assisting him and where the defendant refused to sign a waiver of his right to counsel and repeatedly told the judge he did not wish to waive his right to counsel and that he desired only to be represented by adequately prepared counsel, the defendant neither waived his right to counsel nor elected to proceed pro se. [53-56]

A defendant's right to counsel is not satisfied by the mere presence of an attorney during trial to assist the defendant if that attorney is not adequately prepared. [56-57]

A defendant's right to access to grand jury minutes is not limited to the grand jury returning the indictment for which the defendant is being tried. [57-58]

When special restraints are imposed on a defendant during the trial of a criminal case, the judge's charge to the jury should seek to quell prejudice by warning against it. [58]

INDICTMENTS found and returned in the Superior Court on June 18, 1974.

The cases were tried before *Chmielinski,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Daniel F. Toomey* for the defendant.

*Peter B. Gay,* Special Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant, Cavanaugh, was found guilty by a jury of armed robbery while masked (G. L. c. 265, § 17) and of three counts of assault by means of a dangerous weapon (G. L. c. 265, § 15B) after a trial in the Superior Court. We transferred the case here on our own motion (G. L. c. 211A, § 10 [A]). His appeal is before us pursuant to G. L. c. 278, §§ 33A-33G.

Cavanaugh argues that the trial judge erred by: (1) denying a motion for a continuance; (2) forcing Cavanaugh to proceed to trial pro se despite Cavanaugh's refusal to waive his right to counsel; (3) denying Cavanaugh's motion to inspect certain grand jury minutes; and (4) failing adequately to inform the jury about certain security measures taken at trial. We conclude that Cavanaugh was denied his right to counsel at trial without a waiver of that right. His convictions must be reversed. We consider only those facts and issues necessary to explicate our decision.

Cavanaugh was indicted on June 18, 1974. He was arraigned on June 28, 1974. A private member of the bar, who apparently represented Cavanaugh on other pending matters, filed a limited appearance for the arraignment only on that day. This limited appearance was accepted by a judge other than the trial judge. The defendant pleaded not guilty to all counts and was incarcerated pending trial. No attorney was appointed to represent Cavanaugh for purposes of trial until November 11, 1974.[1] Various motions were filed in the period November 13-19, 1974, and were ruled on by the judge on the first day of trial, November 19, 1974.

On the day before trial, Cavanaugh's counsel moved for a postponement of trial "to allow the defendant and his

---

[1] Although Cavanaugh was indigent, the Massachusetts Defenders Committee was not appointed to represent him because of a conflict of interest between the defendant and defendants in companion cases and the committee's work load, which would have made it impossible to "prepare and defend ... [the] case in the near future." It is unclear whether Cavanaugh consulted with a member of the committee between arraignment and trial, but it is clear that the committee was never appointed to defend him, and that he strenuously claimed he had no consultation with any counsel from June 28 until November 11, 1974.

counsel sufficient time to adequately prepare his defenses in this matter." This motion was argued before the trial judge on the next day. Cavanaugh's counsel stated that he had had "a difficult time in trying to prepare" for the case because of the number of pre-trial motions that were to be filed and because "of the other load of cases that are being called each day and which I find myself connected with . . . ." He concluded by saying: "I feel, and the defendant feels, but particularly the defendant, that we are not adequately prepared because we have not had the time [necessary to prepare for trial]. I haven't had the time to . . . interview any witnesses that might be of great assistance to the defendant."

The trial judge responded to defense counsel's claim of lack of time for adequate preparation: "I am quite sure with the expertise acquired over the past six months, he [the defendant] would be more willing and able to advise you in those matters in which you feel you might be deficient. I think with this expert assistance and advice, you can well be prepared to try an excellent case . . . . I am quite sure he will render you about every bit of assistance in his power to do it."

The assistant district attorney argued that there had been sufficient time to prepare; he stated that counsel "has had knowledge of this case since . . . June [1974] when he filed an appearance albeit for an arraignment, and has conferred with his client many times since then . . . ." This last assertion was emphatically denied by Cavanaugh's counsel, who replied that he had not conferred with Cavanaugh at all in the period between the arraignment and his reappointment eight days before the trial, and that he had only met once with Cavanaugh during the previous eight days.

The judge denied the motion. After three other motions were heard and disposed of, Cavanaugh's counsel asked that Cavanaugh be allowed to address the court. Cavanaugh told the judge that there had been little time to prepare the case and concluded: "I believe I am arbitrarily being denied the right to prepare any defense because none of the facts have been brought forth by me to [the attor-

Commonwealth *v.* Cavanaugh.

ney]." The judge stated: "We will empanel tomorrow ...
and you will have plenty of opportunity this afternoon and
this evening to talk to [the attorney] ...."

The next morning, the judge was told by Cavanaugh's
counsel that Cavanaugh "didn't want ... [his] services as
his attorney." The judge responded by stating that Cava-
naugh had rejected the Massachusetts Defenders Com-
mittee as counsel and that he knew "of no more capable
counsel ... than yourself." He continued: "Now, if the
defendant is adamant in his position that he does not wish
to have you represent him, that leaves us with but one
alternative: he will have to represent himself.... [I]f he
wishes to represent himself, that is his prerogative. How-
ever, I would ask you, please ... to sit by on a consulting
basis ...."

Shortly thereafter, in reference to some motions that
had not yet been filed, the judge said: "[Cavanaugh] has
had six months, at least, to prepare these motions. Ap-
parently, he has been consulting all the law books available
at the House of Correction .... If he insists on acting as
his own counsel and will not take advice from anyone, I
am afraid he will have to take the consequences of his dila-
toriness." Counsel responded that Cavanaugh had not had
counsel from the arraignment to the date of appointment.
Counsel further pointed out that law books were "not in
plentiful availability at the ... House of Correction."

Cavanaugh addressed the judge, stating: "[M]y posi-
tion is that I do need counsel .... I have no knowledge of
... legal litigation." The judge replied that Cavanaugh had
not accepted the aid of the public defenders. There then
occurred a significant colloquy between Cavanaugh and
the judge, which is set out in the margin.[2]

---

[2] THE JUDGE: "You are not going to play games with this Court. A
lot of people think they can come in here and throw their weight
around with impunity. We have a job to do. Your case is going to be
tried today, there is no 'ifs' and 'buts' about it. Whichever way you
want to proceed. I am running the court, not you."

THE DEFENDANT: "I understand that. Your Honor, just allow me to

Commonwealth *v.* Cavanaugh.

The trial began. Cavanaugh did consult with the attorney but he continued to inform the judge of his unfamiliarity with the law and of his desire to be represented by adequately prepared counsel. It is clear from the record that Cavanaugh would not have objected to his appointed counsel's representing him if counsel had felt that he was prepared for the trial.

1. The Sixth and Fourteenth Amendments to the United States Constitution afford a defendant the right to assistance of counsel in all State criminal prosecutions which may result in the loss of his liberty. *Argersinger* v. *Hamlin,* 407 U.S. 25 (1972). *Gideon* v. *Wainwright,* 372 U.S. 335 (1963). See also *Williams* v. *Commonwealth,* 350 Mass. 732 (1966). Counsel for a defendant must be afforded "a reasonable opportunity to prepare and to present the defence," *Lindsey* v. *Commonwealth,* 331 Mass. 1, 2 (1954). See also *Commonwealth* v. *Brant,* 346 Mass. 202 (1963); *Jones* v. *Commonwealth,* 331 Mass. 169 (1954).

Ordinarily, the granting of a continuance rests in the

---

say this: that I never asked the public defenders or discussed with the public defenders . . . ."

THE JUDGE: "That is your own fault. They are appointed to defend you."

THE DEFENDANT: "They were never appointed. On June 28, [the attorney] solely stood for the purposes of arraignment on my behalf, and I never spoke to [the attorney] until on November 11 when the Court appointed [the attorney] to represent me on this case here. But in the six months from June all the way to November 11, I never discussed this case with a public defender or [the attorney]."

THE JUDGE: "I don't care what the circumstances are now. You are here for trial. It has been sent down for trial and we are going to proceed with the trial. You can proceed with or without [the attorney]. That is up to you. Whichever way you do it, it is going to be tried."

THE DEFENDANT: "I just maintain that I can't defend myself adequately and properly. I am not a trial attorney, I have no knowledge of the law."

THE JUDGE: "[The attorney] will be right there next to you to advise you. Let's empanel. Let the record indicate that the defendant refuses to sign a waiver of counsel; that the defendant has refused to sign a waiver of counsel after having been informed of his right to have counsel appointed by the Court to represent him at every stage of the proceedings in this case. He has elected to proceed without counsel. He has refused to sign the waiver. We will proceed with the empanelment."

sound discretion of the trial judge, and a denial of a continuance will not constitute error absent an abuse of that discretion. *Commonwealth* v. *Klangos,* 326 Mass. 690 (1951). The discretion of the trial judge cannot be exercised in such a way as to impair the constitutional right to have counsel who has had reasonable opportunity to prepare a defense. See *Chandler* v. *Fretag,* 348 U.S. 3 (1954). Cf. *Commonwealth* v. *Locke,* 335 Mass. 106, 111 (1956).

There is no "mechanical test" for deciding when a denial of a continuance is so arbitrary as to violate a defendant's right to effective assistance of counsel and to due process of law. *Commonwealth* v. *Smith,* 353 Mass. 442, 445 (1968). "The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar* v. *Sarafite,* 376 U.S. 575, 589 (1964).

"In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy." *Commonwealth* v. *Gilchrest,* 364 Mass. 272, 276-277 (1973). In considering these factors, a "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar* v. *Sarafite, supra* at 589, quoted in *Commonwealth* v. *Smith, supra* at 445. Cf. *Commonwealth* v. *Bettencourt,* 361 Mass. 515 (1972), denial of petition for writ of habeas corpus aff'd sub nom. *Frates* v. *Bohlinger,* 472 F.2d 149 (1st Cir. 1973).

The "facts" on which the trial judge acted in denying counsel's motion for a continuance in this case are shown by careful review of the record to be substantially and materially erroneous. The trial judge assumed that he was the judge who had presided over the arraignment of the

defendant; the docket shows otherwise. The trial judge assumed he had set bail for this defendant; the docket shows otherwise. The trial judge assumed that attorneys of the Massachusetts Defenders Committee had been appointed to represent this defendant whereas the docket clearly shows that this was not the case; indeed, a certificate of record filed by another judge showed that attorneys of the committee could not represent the defendant. He assumed the defendant had consulted with attorneys of the committee, but there was no evidence of such consultation and the representations of both the defendant and appointed counsel were to the contrary. The trial judge further indicated he believed the defendant to be dilatory and to have obtained prior continuances, but the record shows no prior continuances. The position of the trial judge that the defendant lacked diligence and was seeking to disrupt the administration of justice was not warranted by the facts of record at that time. Nor was there any showing by the Commonwealth that any public inconvenience, increased costs or prejudice would occur if the request for a continuance was granted. Thus, this case is distinguishable from prior decisions holding that a denial of a continuance in circumstances involving lack of diligence and dilatory tactics by a defendant is within the sound discretion of the trial judge. See e.g., *Commonwealth* v. *Bettencourt, supra; Commonwealth* v. *Scott,* 360 Mass. 695 (1971) ; *Commonwealth* v. *Brant,* 346 Mass. 202 (1963). Additionally, this case is not one where counsel sought delay and the judge forced the defendant to trial while still represented by counsel. *Commonwealth* v. *Bettencourt, supra.* Rather, this case involves a circumstance where the defendant was forced to trial representing himself with an attorney whom both defendant and the attorney described as unprepared, standing by under order of the judge on "a consulting basis." The Commonwealth now seeks to sustain the ensuing conviction on the alternative ground that (1) the defendant waived his right to counsel, or (2) he was, in effect, adequately represented

by counsel. Neither of these arguments is persuasive in the circumstances of this case.

Assistance of counsel, "deemed necessary to insure fundamental human rights of life and liberty," *Johnson* v. *Zerbst,* 304 U.S. 458, 462 (1938), may be waived; there is a corresponding constitutional right to proceed pro se. *Faretta* v. *California,* 422 U.S. 806 (1975). When a defendant indicates his desire to proceed pro se, the trial judge has "the serious and weighty responsibility ... of determining whether there is an intelligent and competent waiver," *Johnson* v. *Zerbst, supra* at 465, and, in such a case, "a defendant ... should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta* v. *California, supra* at 835, quoting from *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 279 (1942).

When the question of waiver is raised, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... [they] 'do not presume acquiescence in the loss of fundamental rights.' " *Johnson* v. *Zerbst, supra* at 464 (footnotes omitted). See generally *Duncan* v. *Louisiana,* 391 U.S. 145, 148-149 (1968); *Gideon* v. *Wainwright,* 372 U.S. at 340.

The Commonwealth argues that the transcript "clearly shows" that Cavanaugh "knowingly and intelligently" waived his right to counsel by "elect[ing] to discharge appointed counsel and proceed pro se." The Commonwealth also claims that the defendant was advised "many times" by the trial judge of the "pitfalls in proceeding pro se." See *Commonwealth* v. *Mott,* 2 Mass. App. Ct. 47, 52 (1974). Finally, the Commonwealth places great significance on the fact that Cavanaugh frequently consulted with the attorney "consultant," concluding that Cavanaugh "was in fact represented by counsel." The basic difficulty with these arguments, and, indeed, with the trial itself, is the failure to recognize the Hobson's choice with which Cavanaugh was faced. On the one hand, he could

proceed to trial represented by counsel who characterized himself as "unprepared";[3] on the other, he could demonstrate his justifiable concern about that state of affairs only by proceeding to trial pro se. To argue that proceeding to trial, with consulting counsel who felt he was not adequately prepared, amounted to a knowing and intelligent waiver is to suggest that a defendant may only reserve his rights on the issue by refusing to go to trial at all, or by remaining entirely silent throughout the trial.[4]

The record in this case must be strained to reach the Commonwealth's conclusion. First, Cavanaugh refused to sign the waiver of counsel form. While this is by no means conclusive, see *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 368 (1971), cert. denied, sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972), it is certainly indicative of Cavanaugh's position.[5] Second, the judge did not engage in an appropriate inquiry, as required most recently by *Faretta* v. *California,* 422 U.S. 806 (1975). Third, Cavanaugh's repeated statements to the judge made it clear that he did not wish to waive his right to counsel; rather, he wanted "prepared" counsel. Fourth, Cavanaugh's statements during the course of trial displayed a similar desire to be represented and an acknowledgment of his inability properly to conduct a defense.

---

[3] This fact serves to distinguish this case from others in which counsel has represented himself as prepared but the defendant has disputed that representation or sought to change counsel at the time of trial. See *Commonwealth* v. *Miskel,* 364 Mass. 783 (1974); *Commonwealth* v. *Scott,* 360 Mass. 695 (1971).

[4] This was the case in *State* v. *Renshaw,* 276 Md. 259 (1975), where the defendant did not examine witnesses, made no objections, took no exceptions, and filed no motions. *Renshaw* is discussed in the text *infra;* however, the Maryland court found, as we do, that there was no waiver under the circumstances.

[5] Just as it is true that signing a waiver form is some evidence of intent to waive counsel, see *Crowell* v. *Commonwealth,* 349 Mass. 776 (1965), so is failure to sign a form some evidence of intent not to waive counsel. Cf. *Commonwealth* v. *Miskel,* 364 Mass. 783 (1974).

This inability, even with the aid of consulting counsel, is made abundantly clear by the record.

Other courts, faced with the type of problem we confront in this case, provide strong support for the result we reach. In *State* v. *Renshaw*, 276 Md. 259, 263-264 (1975), the court found that "the trial judge treated [defendant's] expression of dissatisfaction with assigned counsel, his request for a change of counsel and his silence [at trial] as a waiver of the right to counsel and an election to proceed in proper person." After reviewing Supreme Court precedents, including the recent case of *Faretta* v. *California*, 422 U.S. 806 (1975), the Maryland Court of Appeals concluded: "[I]n a case like the one at bar, where the accused fails to waive his right to counsel by making an unequivocal choice, but merely insists on a different lawyer, effective legal representation must be required by the court.... The criminal defendant ... is entitled to genuine and effective representation." 276 Md. at 268, citing *McMann* v. *Richardson*, 397 U.S. 759, 771 (1970). In *Renshaw*, unlike the case before us, counsel had done a substantial amount of pre-trial research and had conferred with the defendant at least nine times prior to trial. See 276 Md. at 261 & n.1.

As the Maryland court pointed out, insistence on obtaining a new lawyer is not necessarily either "a waiver of ... [the] right to counsel ... [or] an indication of a desire to proceed alone." *Id.* at 266, citing *United States* v. *Fay*, 364 F.2d 219 (2d Cir. 1966), and *Patton* v. *North Carolina*, 315 F.2d 643 (4th Cir. 1963). See also *United States* v. *Woods*, 487 F.2d 1218 (5th Cir. 1973); *Sawicki* v. *Johnson*, 475 F.2d 183 (6th Cir. 1973). Nor did the Maryland court find reliance on consulting counsel, at various stages of the trial, inconsistent with assertion of the right to assistance of counsel: "In addition to his explicit statements ... [that he wanted to be represented by counsel, defendant's] acceptance of appointed counsel's assistance prior to trial and after the verdict was rendered indicated a desire to be represented." 276 Md. at 266, and cases cited.

Also instructive is the case of *People* v. *Wilson,* 43 Mich. App. 459, 461 (1972), where the defendant claimed that his attorney was not adequately prepared. The court reversed the trial judge's ruling that the defendant had to accept his present attorney or proceed pro se (which the defendant "reluctantly" did). As the appellate court noted: "The coercive effect of such a mandatorily imposed choice without the benefit of an evaluation of [the defendant's] claims negates any contention that defendant voluntarily waived his right to counsel." *Id.* at 461 n.1. And, in *Commonwealth* v. *Grant,* 229 Pa. Super. 419 (1974), where the defendant's request for different counsel resulted in the trial judge's forcing the defendant to fire his appointed counsel and proceed pro se (with appointed counsel consulting), the court reversed, finding no voluntary and intelligent waiver.

Given the facts of the case before us and the legal precedent in this area, we hold that, under the unusual circumstances of this case,[6] the defendant neither waived his right to counsel, nor elected to proceed pro se.

The Commonwealth's contention that the defendant was "in effect given the 'effective assistance' of counsel as required by the Constitution" by the appointment of the attorney as a "consulting attorney" is without merit. The Commonwealth relies on *Commonwealth* v. *Maynard,* 2 Mass. App. Ct. 895 (1974), for this proposition. *Maynard* did involve a similar consulting arrangement but it was one which was worked out by the defendant without objection and with his acquiescence. Additionally, in *Maynard,* no question was raised as to the attorney's competence and preparation for trial. *Maynard* is thus clearly

[6] As we have already indicated, the granting or denial of a continuance vests in the sound discretion of the trial judge. Defendants or attorneys who attempt to engage in either dilatory tactics or schemes to disrupt the orderly administration of criminal justice should not receive relief below and will not receive it on appeal. See cases cited p. 52 and note 3 *supra.* However, in this most unusual case, where the trial judge's denial of a continuance was based on a number of important misapprehensions of fact which resulted in a denial of the defendant's right to counsel, relief is appropriate.

Commonwealth *v.* Cavanaugh.

distinguishable on its facts. A defendant's right to counsel is not satisfied by the mere presence of a competent attorney if that attorney is not prepared. *United States* v. *Woods,* 487 F.2d 1218 (5th Cir. 1973). Accord, *State* v. *Renshaw, supra; Commonwealth* v. *Grant, supra.* Consequently, Cavanaugh's Sixth Amendment right to counsel was violated, and the convictions must be reversed.[7] Although we reverse on this basis, two other matters raised by the defendant require brief comment here as similar issues may arise at retrial.

2. Prior to trial, Cavanaugh's attorney sought to gain access to the grand jury testimony of an Officer Santos who was scheduled to, and did, testify at trial. Although Cavanaugh was indicted by the June, 1974, grand jury for the crimes of which he was convicted below, a November, 1974, grand jury indicted Cavanaugh for conspiracy to commit armed robbery. The November indictment was based on the same events as the June indictments. Officer Santos did not testify before the June grand jury, but he did testify before the November grand jury. The motion to obtain these minutes was denied by the trial judge on the basis that *Commonwealth* v. *Stewart,* 365 Mass. 99 (1974), limits access to grand jury minutes to the grand jury returning the indictments for which the defendant is being tried. Although we did not face such a question in *Stewart,* we find the language of that case and the language of *Commonwealth* v. *Lewinski,* 367 Mass. 889 (1975), which expanded the *Stewart* rule of discovery to written statements within the prosecution's control, indi-

---

[7] The Commonwealth does not explicitly argue that, even if the trial judge erred, he committed harmless error. Such an argument would seem precluded by the Supreme Court's forceful language in *Chapman* v. *California,* 386 U.S. 18 (1967): "[O]ur prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . ." *Id.* at 23 & n.8, citing *Gideon* v. *Wainwright,* 372 U.S. 335 (1963) (right to counsel). As Mr. Justice Stewart noted in his concurrence in *Chapman:* "When a defendant has been denied counsel at trial, we have refused to consider claims that this constitutional error might have been harmless. . . . That, indeed, was the whole point of *Gideon* v. *Wainwright,* 372 U.S. 335 [(1963)] . . . ." 386 U.S. at 43.

cate that it is substance, not form, that should control. *Lewinski,* which was decided subsequent to Cavanaugh's trial, provides ample guidance in the event a similar problem should arise on retrial.[8]

3. It appears special security precautions were taken as to Cavanaugh throughout the trial in that two guards were positioned near him and followed him about the court room as he conducted his pro se defense. On the third day of trial Cavanaugh complained to the judge about this; in response the judge stated to the jury that this had been "done at the suggestion of the Court." Cavanaugh argues on appeal that this should have been coupled with a cautionary instruction that no adverse inferences should be drawn by the jury in a case where court room security is substantial.

We addressed the problems presented by unusual court room security procedures and by shackling in *Commonwealth* v. *Brown,* 364 Mass. 471 (1973), and we need not repeat at length what was said there. However, it may be helpful to reëmphasize that, "[w]hen special restraints are imposed, the judge's charge to the jury should seek to quell prejudice by reasoning and warning against it" (footnote omitted). *Id.* at 476. See also *Commonwealth* v. *Curry,* 368 Mass. 195, 201 (1975).

4. Because Cavanaugh's Sixth Amendment right to counsel was violated at trial, his convictions in the Superior Court are to be reversed.

*Judgments reversed.*
*Verdicts set aside.*

---

[8] See *Commonwealth* v. *Lewinski,* 367 Mass. at 902: "Written statements for this purpose include any statement made by the [trial] witness and in some definite way approved by him, a transcript of a contemporaneous verbatim or substantially verbatim stenographic or other recording of an oral statement by the witness, and a written report consisting of a statement by the witness."