Commonwealth *vs.* Craig Faulkner.

Norfolk. March 9, 1994. - July 15, 1994.

Present: Liacos, C.J., Abrams, Nolan, O'Connor, & Greaney, JJ.

*Practice, Criminal*, Assistance of counsel, Probation, Revocation of probation, Continuance. *Constitutional Law*, Assistance of counsel. *Due Process of Law*, Probation revocation. *Notice*, Timeliness.

A criminal defendant has a right to the assistance of counsel at a probation revocation hearing as part of the sentencing process where the defendant's liberty is at stake. [358-360]

This court stated that whether an attempt to serve notice on a defendant meets due process requirements must be determined on the facts on a case-by-case basis. [360-363]

Where a criminal defendant raises the issue of lack of receipt of notice in a probation revocation proceeding, the burden is on the probation officer to demonstrate that the surrender notice was properly sent to the defendant. [363-364]

The judge at a probation revocation proceeding incorrectly ruled that the defendant in default had waived his right to counsel and he incorrectly denied the defendant a requested continuance to consult with counsel for the reason that the defendant had failed to have appeared at a previously scheduled probation revocation hearing, where the defendant stated that he had not received notice of the hearing and where the probation officer did not carry his burden of demonstrating on the record that notice of the earlier hearing had been properly sent to the defendant. [364-365]

In a probation revocation proceeding in which the defendant was denied his right to counsel by the judge's erroneous refusal to grant a continuance so that the defendant could prepare and present his case, the matter was remanded for a new hearing on revocation at which the defendant will be afforded the opportunity to consult with counsel. [365-366]

Complaints received and sworn to in the Quincy Division of the District Court Department on June 12, 1989, September 21, 1990, and October 24, 1990, respectively.

A proceeding for revocation of probation was heard by *Lewis L. Whitman*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Joseph J. Brodigan*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant appeals from an order of a judge in the District Court Department revoking probation that the defendant had been serving on various convictions and committing the defendant to serve the suspended part of the sentences for those convictions. On appeal, the defendant argues as grounds for reversal that imposition of the sentence for one of the convictions violated constitutional and common law prohibitions against double jeopardy, and that he was denied his right to the assistance of counsel at his probation revocation hearing. We reverse.

The relevant facts are largely undisputed. The defendant was convicted after a bench trial in the Quincy Division of the District Court Department on a complaint (no. 3679) on October 3, 1989, and sentenced to one year in a house of correction.[1] The sentence was suspended and the defendant was placed on probation, originally scheduled for termination on October 6, 1992. Later, on November 28, 1989, the defendant was convicted after a bench trial, again in the Quincy District Court, on another complaint (no. 6779). He was sentenced to unsupervised probation until November 27, 1990, and was ordered to pay restitution.

The defendant's brushes with the law continued. On November 14, 1990, the defendant was convicted after a bench trial in the Quincy District Court on a third complaint (no. 8445), charging him with two offenses. For each offense, he was sentenced to two and one-half years in a house of correc-

---

[1]The offenses for which the defendant was convicted and for which he was placed on probation are irrelevant to this appeal, and we do not discuss them.

tion, eighteen months to be served and the balance suspended. The sentences for these two offenses were to be served concurrently. For no. 8445, the defendant was to serve probation until April 28, 1994. On the same date, November 14, 1990, the defendant also was convicted on no. 8806. The defendant was sentenced to two and one-half years in a house of correction, eighteen months to be served and the balance suspended. For this offense, the defendant was to serve probation until April 28, 1994. The sentences for no. 8445 and no. 8806 were to be served concurrently.

The record reveals that the defendant's probation on no. 3679 was revoked on November 15, 1990, because of a violation of the terms of his probation (presumably, the violation was the convictions on no. 8445 and no. 8806). On November 27, 1990, as a result of violating his probation, the defendant was ordered to serve the one-year sentence on no. 3679 that had been suspended. The District Court judge ordered the one-year sentence on no. 3679 to be served concurrently with the sentence in no. 8445, for which the defendant stood committed to a house of correction for eighteen months.

At some point after November, 1990, the defendant was released from the house of correction. On June 24, 1992, the defendant appeared before a judge in the Quincy District Court for arraignment (no. 6593) on charges for offenses alleged to have occurred on the previous day. During that session, the clerk informed the judge that there were additional charges pending against the defendant (no. 5233 and no. 3550), for offenses alleged to have occurred in January, 1992. The defendant entered pleas of not guilty to all charges.

After arraignment on no. 6593, no. 5233, and no. 3550, the prosecutor, the defense attorney and the judge discussed the matter of bail for the defendant. During that discussion, it was brought to the judge's attention that there was a violation of a probation warrant (surrender notice) outstanding against the defendant, dated February 21, 1992. A hearing had been scheduled for March 3, 1992, but the defendant did

not appear in court on that date. The defense attorney had
been informed of the outstanding revocation of probation
matter when she arrived at court for the defendant's arraign-
ment on June 24, 1992, but not before. She was further in-
formed that the probation officer in charge of the defendant's
case intended to request that the judge hear the matter on
that day.

The judge informed the defense attorney and the prosecu-
tor that he would hear the revocation of the probation matter
forthwith. The defense attorney requested that the judge con-
tinue the matter, asserting that the defendant had not re-
ceived notice of the March 3, 1992, hearing and, thus, he
was not in default.[2] Furthermore, she argued, the defendant
had the right to assistance of counsel at a probation revoca-
tion hearing, and if she did not have the opportunity to pre-
pare adequately for the hearing, the defendant effectively
would be denied that right. The defendant's probation officer
stated that notice had been mailed to the defendant's last
known address and that one of the conditions of the defend-
ant's probation was that he must notify the probation officer

---

[2]The transcript of the hearing records the testimony of the probation
officer as stating that he "issued [the surrender notice] to [the defendant's]
last known address which was 33 Merts Street in North Quincy." The
Commonwealth argues that this was most likely a transcription error, since
"Merts Street" sounds very much like "Myrtle Street," and because the
defendant's last known address was 33 Myrtle Street in North Quincy.
Neither party filed a motion under Mass. R. A. P. 8 (e), as amended, 378
Mass. 932 (1979), to correct the record, and the defendant urges us to
take the record as we find it, citing *Commonwealth* v. *Bannister*, 15 Mass.
App. Ct. 71, 81 n.8 (1983).

We note that the surrender notice, a copy of which was contained in the
Commonwealth's supplemental record appendix, stated the defendant's ad-
dress as 33 Myrtle Street. We further observe that the transcript of the
hearing was of poor quality, which may reflect the inadequacy of the re-
cording devices used at the hearing. See *Greco* v. *Suffolk Div. of the Pro-
bate & Family Court Dep't, ante* 153, 155 (1994). Nevertheless, we treat
this disparity as an ambiguity which the parties did not see fit to resolve by
the proper means, so we take the record as we find it. Thus, there is con-
flicting evidence in the record regarding the address to which the notice
was sent. This conflict, however, is not dispositive of the notice issue in this
case.

of any change of address. The judge denied the request for a continuance and, over the defense attorney's repeated objections, proceeded with the probation revocation hearing.

Paul Willie, a probation officer of the Quincy District Court, testified that he was supervising the defendant's probation on no. 8806, no. 8445, no. 3679, and no. 6779. Willie summarized the terms of the defendant's probation: he was to obey all local, State, and Federal laws and court orders; he was to report to his probation officer at such times and places as required; he was to notify his probation officer of any change of address; and he was to abstain from alcohol and drug use and submit to random drug testing. Willie then testified to the alleged violations by the defendant of his probation: he failed to report to probation from February 12, 1992, to the time of trial; he failed to report for drug testing on February 21, 1992; and he was arrested in Hingham on January 28, 1992, on various charges.[3] Finally, Willie read the Hingham police report regarding the January 28 incidents.[4]

The defendant's attorney again requested a continuance, arguing that the defendant had a right to representation by a prepared attorney. The judge responded that, by failing to appear at the originally scheduled hearing, the defendant "essentially gave up his right to be represented." The judge asked the defendant whether he had anything to present on his own behalf. The defendant's attorney, after conferring with the defendant, responded that the defendant would like to testify on his own behalf, but would not do so until after he had an opportunity to prepare with counsel. The defense attorney then made a closing argument, summarizing the ex-

---

[3]The supplemental record appendix submitted by the Commonwealth reveals that the defendant had been arrested, but not yet arraigned, at the time of the hearing on June 24, 1992.

[4]The probation officer informed the judge that there were other alleged violations of probation since the issuance of the surrender notice dated February 21, 1992. The judge instructed the probation officer to limit his testimony to only those alleged violations that were the subject of the February 21 notice.

planations for the alleged violations that she might have been able to proffer if she had had the opportunity to prepare.

The judge concluded that the defendant had violated the terms of his probation and committed him to serve the balance of his outstanding sentences. A dialogue took place among the judge, the probation officer, the clerk, the prosecutor, and the defense attorney regarding which sentences were outstanding and how they should be served. It appears that the defendant himself attempted to explain to the judge that he had already served one year for no. 3679, and as a result he should not be required to serve more time for that conviction. However, the judge ordered him to serve one year for 3679, and one year for no. 8806 and no. 8445 concurrently, from and after the year for no. 3679.[5]

The defendant requested a stay of the sentences pending appeal, which the judge denied. We transferred the case from the Appeals Court on our own motion.[6] We now reverse.

The Commonwealth concedes that the imposition of a one-year sentence on number 3679 was error, and we agree. We conclude that the defendant's double jeopardy rights were vi-

[5]The clerk announced that on no. 6779, "the Judge is finding in violation of his probation. He *is terminating* that, his [the defendant's] probation terms" (emphasis supplied). On no. 8806, the clerk announced that "it will be violation of probation, found committed for the balance of your term which is one year, I believe." On no. 3679, the clerk announced "a revised probation found. That will be committed one year. It's originally marked guilty, one year house of correction on and after his present sentence being suspended. Today it will read violation of probation, committed for a year, and that's again 3679."

The clerk summarized the judge's order: "[Number 3679] individual disposition given [October 3, 1989], the judge is finding you in violation. He's ordering to serve one year house of correction sentence. . . . On the two cases, [no. 8806] and [no. 8445] which it appears he was given concurrent sentences on these two, two and a half years, 18 months to serve, year suspended, the judge finds him in violation and ordering to serve that year. He's ordering that year to run on and after 3679."

[6]The record does not indicate that the defendant sought a stay of the sentences pending appeal in either the Appeals Court or this court.

olated, and we do not discuss that issue further.[7] Thus, the defendant's appeal poses only two questions that we must answer. The first is whether the defendant has the right to the assistance of an attorney at a probation revocation hearing. The second is whether, in the circumstances of this case, a probation officer's assertion that he mailed a surrender notice to the defendant's last known address demonstrates adequate notice to the defendant which would justify denying the defendant's request for a continuance of the probation hearing.

The defendant argues that he has a right to assistance of counsel at his probation revocation hearing, and that his right effectively was denied because the judge did not allow his attorney time to prepare. The Commonwealth contends that we should analyze this issue as a claim of ineffective assistance of counsel, see *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), not as a claim of the denial of the right to counsel. We decline to treat this case as a claim of ineffective assistance of counsel, because the facts of this case clearly indicate that the defendant was denied the right to counsel. "Counsel for a defendant must be afforded 'a reasonable opportunity to prepare and to present the defence.' "

_____

[7]The Commonwealth asserts that the judge's intention was to impose a two-year sentence on the defendant, and that, since the conviction in no. 6779 carried a maximum penalty of two and one-half years in a house of correction, we should alter the judge's order as recorded in the records of the District Court and impose sentence on that conviction instead of no. 3679 as the judge did. The Commonwealth argues that if the judge had realized the error, he would have done just that. That may be so. Nevertheless, we shall not do what the Commonwealth asks. If there was error, the judge could have corrected it on his own, or either party could have made an appropriate motion. See Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979); Mass. R. Crim. P. 42, 378 Mass. 919 (1979). Neither of these options was pursued.

Absent an appeal by the defendant or cross appeal by the Commonwealth of the disposition of no. 6779, this court will not review, and will not revise, that disposition. Mass. R. A. P. 3, as amended, 378 Mass. 927 (1979). Mass. R. A. P. 16 (a), (b), as amended, 411 Mass. 1602 (1992). Cf. *Commonwealth* v. *Sawicki,* 369 Mass. 377, 380 (1975) (order terminating probation terminates power over probationer). The Commonwealth filed no cross appeal, and the defendant did not take issue with the disposition of no. 6779 on appeal.

*Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50 (1976), quoting *Lindsey* v. *Commonwealth*, 331 Mass, 1, 2 (1954). "The discretion of the trial judge cannot be exercised in such a way as to impair the . . . right to have counsel who has had reasonable opportunity to prepare a defense." *Commonwealth* v. *Cavanaugh*, *supra* at 51.

We turn to the question whether a defendant has the right to counsel at a probation revocation hearing. In *Williams* v. *Commonwealth*, 350 Mass. 732 (1966), this court held that a defendant has a right to the assistance of counsel at a probation revocation hearing when such revocation might result in his imprisonment. *Id.* at 737. This holding was based on Rule 10 of the General Rules, as appearing in 347 Mass. 809 (1964): "If a defendant charged with a crime, for which a sentence of imprisonment may be imposed, appears in any court without counsel, the judge shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."[8]

Although the rule relied on in *Williams* is no longer in effect, the reasoning underlying the decision in that case is still sound:

"Whether there has been conduct which is a violation of the conditions upon which probation was granted is the question in the consideration of possible revocation. The defendant's liberty is at stake, and at this point in the process of sentencing as much as at any other point he has need of counsel. In this case the decision on the petitioner's liberty is still in the hands of the sentencing court; . . . .

"Rule 10 of the General Rules requires that the defendant, in the absence of a waiver, be afforded counsel at a probation revocation hearing where such revocation

---

[8]Rule 10 of the General Rules is no longer in effect, but its requirements are echoed in S.J.C. Rule 3:10, § 2, as appearing in 416 Mass. 1306 (1993), and Mass. R. Crim. P. 8, as appearing in 397 Mass. 1226 (1979). See G. L. c. 211D (1992 ed.).

might result in his imprisonment. It is based on simple justice."

*Williams, supra* at 737. See *Commonwealth* v. *Brennick*, 14 Mass. App. Ct. 952, 953 (1982). The former rule 10 is substantially intact in successor rules. More importantly, despite the change in procedural rules, a probation revocation hearing remains a point in the sentencing process, see *Williams, supra*, and the defendant has a right to counsel during sentencing. *Id.* at 736, citing *Townsend* v. *Burke*, 334 U.S. 736, 740-741 (1948). We can perceive no reason to overrule the conclusion of this court in *Williams*, and therefore we will not do so.[9]

The next issue we must consider is whether notice was sent to the defendant regarding the March 3 hearing which was adequate and thereby justified denial of the requested continuance of the probation revocation hearing. As a matter of due process, a defendant is entitled, among other things, to written notice of the claimed violations of probation. *Commonwealth* v. *Durling*, 407 Mass. 108, 113 (1990), and cases cited. *Commonwealth* v. *Odoardi*, 397 Mass. 28, 31 (1986). Notice must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded. *Odoardi, supra* at 31-32, quoting *In re Gault*, 387 U.S. 1, 33 (1967).

We have found no case which squarely discusses the method or means of notice necessary to satisfy the due process requirements for a revocation of probation hearing. In deciding whether the defendant received adequate notice in this case, however, we are guided by a trio of cases in which this court discussed the notice requirements of G. L. c. 278,

---

[9]The District Court judge stated that the defendant waived his right to counsel by failing to appear at the hearing scheduled for March 3. Even if we were to assume that the defendant actually received notice of that hearing and, despite that notice, failed to appear, we could not conclude that the defendant waived his right to counsel at a subsequent hearing on that basis alone. See *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 53-56 (1976). Accordingly, the District Court judge's finding of waiver was erroneous.

§ 24, the statute governing imposition of sentences on defendants who appeal from convictions in the District Court to Superior Court and then default in Superior Court. *Commonwealth* v. *Bartlett*, 374 Mass. 744 (1978). *Commonwealth* v. *Francis*, 374 Mass. 750 (1978). *Commonwealth* v. *O'Clair*, 374 Mass. 759 (1978). Although G. L. c. 278, § 24, repealed by St. 1992, c. 79, § 196, is no longer in effect, the operation of that statute is similar to that of G. L. c. 279, § 3, the probation revocation statute, in that both statutes have or had as a potential result the imprisonment of a defendant on a sentence previously imposed. Thus, *Bartlett*, *Francis*, and *O'Clair* are persuasive in analyzing the facts of this case.

In *Bartlett*, the defendant's address of record was 163 Pine Street in Gardner. *Bartlett*, *supra* at 745. The notice ordering the defendant to appear in court for a pretrial conference, however, was mailed to 38 Pine Street in Gardner, "an address with no apparent connection" to the defendant. *Id.* No notice was sent to the attorney who represented the defendant in the District Court. *Id.* The defendant did not appear at the hearing, so she was defaulted by a judge who imposed sentence under G. L. c. 278, § 24. *Id.*

This court reasoned that the Commonwealth had the burden "of duly notifying appellants when they are to appear for trial." *Bartlett*, *supra* at 747. We noted that, "[o]nce [the defendant] raised the question of mailing of notice to appear to an apparently incorrect address . . . and her consequent lack of receipt of notice, the burden was on the Commonwealth to prove that notice was, in fact, properly sent." *Id.* at 748. We concluded that the Commonwealth had failed to sustain its burden. *Id.*

In *Francis*, the Superior Court clerk sent notice of a pretrial conference to the defendant at 41 Beech Street in Fitchburg, the address given at the time of the defendant's arrest and appearing on the records of the Superior Court. *Francis*, *supra* at 751. The notice was returned by the postal service, unopened and marked "not forwardable — undeliverable as addressed." *Id.* The clerk then issued a summons for the de-

fendant, giving his address as 41 Beech Street in Fitchburg. *Id.* The summons was returned by a police officer without service, and the officer had noted thereon that there was "no such street address" and that the defendant's "last known address [was] Merriam Avenue, Leominster." *Id.*

On the date scheduled for trial, the defendant did not appear, so he was defaulted by a Superior Court judge who imposed sentence, pursuant to G. L. c. 278, § 24. *Francis, supra* at 751-752. The defendant subsequently was arrested and, at a hearing on his motion to revoke sentence, he presented evidence that there was indeed a "41 Beech Street," where the defendant was living at the time of his arrest. *Id.* at 752. There was evidence that, prior to living at Beech Street, the defendant lived at Merriam Street in Leominster, and that, two weeks after his arrest, he had moved to 126 Myrtle Avenue in Fitchburg. *Id.* The defendant's motion was denied. *Id.*

We affirmed, noting that, unlike *Bartlett* where there was no showing that notice was sent to the defendant's address as appearing in court records, there was shown in that case not only an attempt to send notice to the address of the defendant as appearing in court records, but also an attempt to serve the defendant with a summons. *Francis, supra* at 753. We noted that the defendant failed to notify the court of his new address, and therefore it was through his own fault that he did not receive notice. *Id.* at 753-754. We noted that the "clerk's office did all it could reasonably have been expected to do to notify the defendant." *Id.* at 754.

Finally, in *O'Clair,* the defendant was convicted in the District Court on several complaints. *O'Clair, supra* at 760. On appeal to the Superior Court, the complaints were to be tried in two separate proceedings. *Id.* at 761. The defendant appeared for a pretrial conference but did not appear on either date on which trial had been scheduled. *Id.* The defendant was defaulted by a judge who imposed sentence, pursuant to G. L. c. 278, § 24. *Id.*

The defendant subsequently was arrested and moved to revoke the sentences, arguing that he never received notice to

appear in the Superior Court. *O'Clair, supra* at 761. At the hearing on the defendant's motion, there was evidence that the defendant had lived at four different addresses from the time of his arrest until the time he was defaulted in Superior Court. *Id.* Notice of the pretrial conference, at which the defendant appeared, had been sent to his address given at the time of his arrest. *Id.* at 762. Two of the three other addresses at which the defendant claimed to have lived were contained in the District Court records. *Id.* After the defendant did not appear for the first scheduled trial, summonses were issued to two of his known addresses, including the address given at the time of his arrest and to which notice of the pretrial conference was sent. *Id.* A copy of the summons also was mailed to his third known address. *Id.* We concluded that "the clerk's office did all it was required to do to notify a seemingly transient defendant." *Id.* at 764.

As these cases demonstrate, the adequacy of an attempt or attempts to serve notice must be determined on a case-by-case basis, and the court particularly should examine the adequacy of the attempts in light of the information possessed by the authority charged with giving notice. See *Francis, supra* at 754; *O'Clair, supra* at 764; *Bartlett, supra* at 745, 748. See also *Durling, supra* at 113-114 (requirements of due process depend on circumstances of each case).

In this case, the record demonstrates that the surrender notice itself contained the last known address of the defendant (Myrtle Street). The transcript of the hearing, see note 2, *supra*, however, reflects the testimony of the probation officer that the notice was sent to "Merts Street." While it may be true generally that a surrender notice would be mailed to the address contained therein, we shall not draw that conclusion when the record is completely bereft of any evidence to that effect.[10] It was never shown by competent

[10]For example, there was no evidence that the probation officer as a matter of course mails surrender notices to the address listed therein, or that in this case the surrender notice was mailed to the address listed therein. The only transcript evidence was that the notice was mailed to "33

evidence that the defendant in fact had changed his address and had failed so to notify his probation officer. Thus, it is possible that the notice was incorrectly addressed, or that it was lost in the mail. Furthermore, there was no showing that the probation officer made any other attempts to notify the defendant, such as attempted personal service, telephone call, or a visit to his address. In addition, the defendant was not allowed the opportunity to prepare with counsel, to explain his failure to report, or to explain his alleged failure to notify the probation officer of a new address.

We do not suggest that a probationer may change his address, fail to notify his probation officer, and thus avoid imposition of sentencing after a probation violation. We merely conclude that the probation officer has the burden to show that notice was properly sent, in light of the information possessed by the officer. Where, as here, there was no evidence that the defendant in fact had changed his address, and the defendant raises nonreceipt of notice, the probation officer had the burden of showing that notice was properly sent. This burden was not met. Thus, we conclude that the defendant did not receive the notice required by due process.

The matter of granting a continuance is largely within the discretion of the trial judge. *Commonwealth* v. *Smith*, 353 Mass. 442, 445 (1968). But see *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 51 (1976). There was in this case a justifiable reason for delay, *Smith, supra,* but despite that, the judge denied the request for continuance. Doing so, the defendant's "right to defend with counsel [was rendered] an

---

Merts Street."

Although the probation officer did not proffer at the hearing, and the surrender notice did not list, that the defendant allegedly violated his probation by failing to notify the probation officer of a change of address, the judge cited the defendant's failure to report a change of address in denying the request for continuance. We note, however, that the defendant's alleged failure to notify, if asserted as a ground for revocation, was required to be proved at the revocation hearing. *Commonwealth* v. *Durling*, 407 Mass. 108, 111-112 (1990). Thus, the judge should not have denied continuance on that basis without any evidence on that issue having been presented by either side.

empty formality." *Id.*, quoting *Ungar* v. *Sarafite*, 376 U.S. 575, 589 (1964). See *Lindsey* v. *Commonwealth*, 331 Mass. 1, 5 (1954) (denial of continuance deprived defendant of due process when it left him with an attorney "who could know almost nothing about the cases and who had had no reasonable opportunity to prepare them"). The defendant was not afforded the opportunity to have counsel aid him "in marshaling the facts, introducing evidence of mitigating circumstances and . . . assisting the defendant to present his case." *Commonwealth* v. *Brennick*, 14 Mass. App. Ct. 952, 953 (1982), citing *Osborne* v. *Commonwealth*, 378 Mass. 104, 114 (1979), and *Mempa* v. *Rhay*, 389 U.S. 128, 135 (1967).

We conclude that the judge erred in refusing to grant the continuance requested by the defendant. As a result, the defendant was denied his right to counsel. We have also concluded that imposition of a sentence on no. 3679 violated the defendant's double jeopardy rights. Since the defendant effectively was denied an opportunity to prepare and present his case, we do not know what evidence he might have presented to rebut the probation officer's testimony. Thus, we are unable to conclude that the judge's decision to impose a one-year sentence on the defendant was proper despite the errors we have found.[11] We observe that the defendant was committed on June 24, 1992, and that mittimus papers were issued at that time. We also note that it does not appear that the defendant's sentence was stayed pending appeal. See note 6, *supra*. Therefore, by our calculation, the defendant was to

---

[11]There are two components to the decision to revoke probation: a retrospective factual question whether the probationer has violated a condition of probation and a discretionary determination by the judge whether violation of a condition warrants revocation of probation. *Commonwealth* v. *Marvin*, 417 Mass. 291, 295-296 (1994) (Liacos, C.J., dissenting), quoting *Black* v. *Romano*, 471 U.S. 606, 611 (1985). Because the defendant in this case was unable to prepare and present his case with the assistance of his attorney, the judge could not have made an informed analysis of either component. See *Durling, supra* at 115-116 (discussing interests of defendant and of Commonwealth in probation revocation proceedings, and noting that "both have an interest in a reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation").

be released on or about June 24, 1994. The defendant will have served the two years imposed by the trial judge, one of those years being in violation of the defendant's double jeopardy rights.

Accordingly, we vacate the imposition of sentence on complaint no. 3679 and reverse the order of the District Court judge on that conviction. Complaint no. 6779 is not before us, so the order of termination of probation in that case must stand. The orders imposing sentences on complaint no. 8806 and complaint no. 8445 are vacated and reversed. The case is remanded for a hearing on the issue of probation revocation on complaint no. 8806 and complaint no. 8445 only, at which the defendant must be afforded the opportunity to have counsel assist him in preparing and presenting his case.[12]

*So ordered.*

---

[12]The judge should limit the inquiry to only those facts on which the surrender notice of February 21, 1992, was based (not, for example, the fact of the defendant's subsequent conviction on the charges arising from his Hingham arrest on January 28, 1992).