COMMONWEALTH *vs.* TIMOTHY J. MORSE.

No. 98-P-2254.

Worcester. September 13, 2000. - December 18, 2000.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Abuse Prevention. Due Process of Law,* Probation revocation, Notice, Continuance. *Practice, Criminal,* Probation, Continuance. *Notice,* Probation revocation.

There was no merit to a defendant's assertion on appeal that his counsel had insufficient time to prepare for a probation revocation hearing, where he made no request for a continuance or offer of proof as to what evidence would have been presented if more time were afforded. [586-588]

A probationer waived any right to a preliminary probation revocation hearing by not raising such a claim before the judge who heard the matter and, in any event, demonstrated no prejudice. [588-592]

The record of a probation revocation hearing disclosed sufficient reliable evidence to warrant the judge's conclusion that the defendant had violated his probation, and that the judge had not made written findings did not warrant any relief from the order of revocation. [592-594]

COMPLAINTS received and sworn to in the Clinton Division of the District Court Department on November 7, 1997, November 21, 1997, and January 22, 1998, respectively.

A proceeding for revocation of probation was heard by *Thomas F. Fallon,* J., and a motion to revise and revoke was heard by *Austin T. Philbin,* J.

*Mark W. Griffin* for the defendant.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. The defendant, Timothy J. Morse, was convicted in Clinton District Court in February, 1998, on his pleas of guilty to charges (inter alia) of indecent assault and battery on a child under fourteen (the minor daughter of one Hope Bushey), domestic assault and battery on Bushey, and violation of a no-contact protective order obtained against him by Bushey. He

received a sentence of two and one-half years, six months to be served in a house of correction, tó be followed by two years supervised probation, one condition of which was to have no contact with Bushey or her family. On June 18, 1998, Bushey reported to Morse's probation officer, then complained to the Clinton police department, that the defendant had, on June 17, 1998, at approximately 5:30 P.M., seen her with her daughter and mother in her car at an intersection in Hudson and had yelled at her from his car, "Hey, bitch, don't think I'm done with you and your daughter yet."

Based upon Bushey's complaint, on June 18, 1998, a warrant issued from Clinton District Court for Morse's arrest. A "notice of surrender and hearing(s)" was also issued by his probation officer listing three claimed violations of the conditions of his probation: (1) the contact with Bushey on June 17, 1998; (2) failure to notify his supervising probation department of a change of address (from Berlin to Hudson); and (3) failure to register as a sex offender in the town where he resided (Hudson). The notice did not indicate whether the hearing on the violation was to be a preliminary hearing or a final revocation hearing. On June 19, 1998, Morse was arrested on the warrant and, after a bail hearing (at which he was represented by counsel), he was held on $50,000 cash bail (which he failed to raise). He was also served with the notice of surrender on June 19. At his arraignment, Morse stated that his current address was in Hudson, although he had previously provided the probation department with an address in Berlin. His case was "continued to 6/23/98 for violation of probation hearing."

On June 23, 1998, the presiding judge appointed counsel for Morse, who claimed indigency. (The exact time of that appointment is not revealed by the record.) At some point thereafter (again, the time is unknown), an evidentiary hearing on the charged probation violations took place. Neither Morse nor his counsel raised as an issue whether this was a preliminary or a final revocation hearing. Bushey testified to the facts regarding the June 17 encounter. Morse's counsel cross-examined Bushey, and then had Morse testify in his own behalf. While admitting that he currently lived in Hudson with a woman named "Sally" and that he had neither informed the probation department of that fact nor registered as a sex offender in Hudson, Morse explained that he had never actually resided in Berlin, having only "stayed there [with his brother] probably one night," but claimed (without substantiation) that he had registered as a sex

offender in Berlin. He explicitly denied (both in direct testimony and in response to a question from the judge) any contact with Bushey on June 17, claiming that he had been at an auto repair shop in Hudson from about 5:00 P.M. to 5:15 P.M. or possibly as late as 5:30 P.M., talking with "a guy named Tom" about a repair estimate. Admitting that he had no verification "today" that he was at the shop as he claimed, Morse said, "[I]f I can be granted more time to receive that I could . . . present that to the Court."[1]

After closing arguments by the probation officer (who asked for immediate imposition of Morse's unserved sentence) and Morse's counsel (who began by saying that he "would like to have more time to at least prepare for this particular matter"), the judge stated, "I find him in violation of all [three] matters"[2]; and sentenced Morse to serve two and one-half years on and after his "original" sentence. On July 3, 1998, Morse filed notices of appeal as to the probation violations found on two of his convictions, which were docketed in this court on December 4, 1998. No notice of appeal was filed as to the third until January 11, 1999 (with the approval of a single justice of this court). On July 24, 1998, Morse's counsel was permitted to withdraw.

On July 28, 1998, Morse filed, pro se, a "motion to revise and revoke," claiming that the sentences imposed on the probation violations were "too harsh." In an affidavit supporting the motion, he acknowledged that on June 17, 1998, he had in fact "coincidentally r[u]n into [Bushey] at a traffic light in . . . Hudson . . . [while she was] a passenger in her mother's car," but he denied saying anything to her.[3] The motion to revise and revoke was heard in Clinton District Court on December 28,

---

[1]Bushey told the judge, as part of her "victim impact statement," that on June 17, she had seen Morse "pull into the auto body shop . . . right after he seen [*sic*] me."

[2]In three documents dated June 23, 1998, relating to each of the convictions and entitled "Probation Revocation Proceedings Findings and Orders," the judge made a "final finding that [Morse] violated his . . . probation in the following respects: contact with victim 6/17/98; failure to report to probation change of address 6/22/98; failure to register as Sex Offender in Hudson, MA 6/22/98"; and, describing the evidence upon which he relied, the judge wrote, "Defendant violated the terms of his probation."

[3]Morse did not include any proceedings in the Clinton District Court subsequent to the July 3, 1998, notices of appeal in the record on appeal, although the docket in his record appendix reveals his filing of the motion to revise and revoke. The Commonwealth moved on August 30, 2000, to expand

1998, by a new judge (the probation surrender judge having retired). Morse was represented at the hearing by a new attorney. The judge denied the motion[4] and also corrected the sentence

---

the record in this case by inclusion of a certified copy of the defendant's affidavit in support of that motion plus material related to the subsequent correction of the sentence (see discussion, *infra*). Morse has vigorously opposed the motion, asserting that the issue of his sentence, not raised by his appeal, is inappropriate for our consideration and that his affidavit — which concededly "contradicts" his testimony at the revocation hearing — is not properly part of the record on appeal. He contended that its introduction into that record is unsupported by any of the authorities relied on by the Commonwealth, all of which dealt with documents or statements that preceded the filing of the notice of appeal. We allow the Commonwealth's motion as to the affidavit. Contrary to Morse's position, the affidavit *is* part of the record in this matter (aside from the fact that its submission did precede his filing of his final notice of appeal). The uncontradicted docket in the record appendix reveals this, see *Savage* v. *Welch*, 246 Mass. 170, 176 (1923), and it *is* one of the "original papers and exhibits on file," Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979), in the matter of his probation revocation proceeding in the Clinton District Court — a fact we have actually ascertained and of which we can take judicial notice. See *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983); *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681 (1974); *Robbins* v. *Robbins*, 16 Mass. App. Ct. 576, 581 n.8 (1923). We may, on our own motion, allow its inclusion as part of the instant record as an "omission" that should be included so that the "record . . . conform to the truth." Mass.R.A.P. 8(e), as amended, 378 Mass. 934 (1979). In any event, we are entitled to rely on parts of the record even if not included in the record appendix by the parties. See Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979). See also *Pilch* v. *Ware*, 8 Mass. App. Ct. 779, 780 (1979) ("Everything which was presented to the . . . judge [below] is in the record before us"); *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 478-479 n.2 (1980) ("[w]e are not bound by the failure of the parties to include . . . [a] document [that was in fact filed with the trial court] in the appendix"). Further, we are entitled to access to the probation-related document by virtue of the provisions of the criminal offender record information system, whether or not it was technically part of the record on appeal. See G. L. c. 6, §§ 167, 168A & 172. In this connection, we note that a motion to revise and revoke a sentence is in the nature of a motion to reconsider that sentence and is to be considered "in light of the facts as they existed at the time of sentencing . . . ." *Commonwealth* v. *Barclay*, 424 Mass. 377, 380 (1997), quoting from *Commonwealth* v. *Layne*, 386 Mass. 291, 295 (1982).

[4]Morse immediately filed a notice of appeal from the denial of his motion to revise and revoke; but, four months later and represented by new counsel, he moved to dismiss that appeal, shortly after the Commonwealth had moved to stay the earlier appeal in anticipation of moving to consolidate the two appeals, specifically relying on Morse's affidavit as relevant to the prior appeal. The Commonwealth's request for a stay was ultimately denied, and the second appeal was never docketed.

imposed on the defendant by his predecessor. (The corrected sentence is not currently challenged on appeal.)

Morse's appeal raises several alleged constitutional defects in his probation surrender and revocation proceedings. We agree with the Commonwealth that no reversible error occurred and that the revocation of Morse's probation should be affirmed.

1. *Insufficient time for counsel to prepare.* Pointing to the undoubted right of one facing probation revocation to have a "reasonable opportunity to prepare" for the hearing, and in particular a reasonable opportunity for counsel to aid him in his defense, *Commonwealth* v. *Faulkner*, 418 Mass. 352, 358-360, 365 (1994), quoting from *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50 (1976), Morse asserts that his due process rights were violated by being given no more than four days' notice of the hearing on the alleged violations and being assigned counsel only on the day of the hearing.[5] His argument founders on the fact that, while mentioning that they wished they had had more time to prepare, neither he nor his counsel moved for a continuance, much less made an offer of proof or even a statement regarding what they would do or what evidence they would present if they received more time to prepare.[6]

Even were we to construe their unspecific comments as

---

[5]In a postbrief letter filed pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), Morse calls our attention to the recently promulgated District Court Rules for Probation Violation Proceedings, which require (unless waived) at least seven days' notice of alleged violations (rule 3[b][iii]) and at least seven days between appointment of counsel and the hearing (rule 4[d]), as well as a "reasonable time to prepare" for the hearing generally (rule 8[c]). Such mandatory rules were not applicable at the time of his hearing, and, to the extent they existed as guidelines for the probation department and the District Court at such time, any failure to follow them was not, contrary to Morse's assertion, per se reversible error. See *Rubera* v. *Commonwealth*, 371 Mass. 177, 185-186 (1976).

[6]The Notice of Surrender and Hearing(s) had explicitly stated that "[y]ou may . . . request a continuance [at the scheduled hearing] if additional time is required to protect your rights." When the hearing began, counsel were asked, "Are we ready?" The probation officer responded, "Yes, we're ready to go," indicating the posture of both counsel, whereupon the judge said, "Let's go." If Morse's counsel had any misgivings about his defense preparation, he said nothing at the time. Morse couches his present argument in terms of denial of the right to counsel, not as a claim of ineffective assistance of counsel. See *Commonwealth* v. *Faulkner*, 418 Mass. at 358-359. The insubstantial and conjectural nature of Morse's argument can be seen in his imprecise characterization of counsel's expected performance had he been given more time to prepare: "he *may* have been able to develop the Defendant's defense

requests for a continuance, action on such a request "lies within the sound discretion of the judge, and will not be disturbed unless there is a clear abuse of discretion." *Commonwealth* v. *Habarek*, 402 Mass. 105, 108 (1988). Morse has failed to argue, let alone demonstrate, any such abuse on this record, and we discern none. "[I]t was a simple case to prepare and try . . . [and] the record does not support [his] contention that the denial of his motion for [a] continuance prejudiced his case." *Ibid.* See *Commonwealth* v. *Joubert*, 38 Mass. App. Ct. 943, 943-944 (1995) (no abuse of discretion in judge's refusing to allow a motion for a continuance on the morning of the scheduled probation revocation hearing being held, as here, on an accusation of a violative incident involving a single witness, where the probationer had, as here, four days' notice of the accusation, and defense counsel had the morning to interview the witness "and to conduct any investigation deemed necessary" before the hearing began in the afternoon). (As a cautionary note, we remind all participants in the process that there is no mechanical test for evaluating a motion for a continuance; rather, it must be considered in light of the circumstances of the particular case and only after balancing the relevant factors weighing for

. . . and *may* have achieved a different outcome." Although he now claims that, with more time, counsel could have called "Tom" from the auto repair shop to testify as to his alibi, such a contention appears disingenuous in light of his contradictory affidavit on his motion to revise and revoke, which admitted his physical encounter with Bushey on the day and at the place she testified to, notwithstanding his explicit denials of having even seen her that day at the hearing (see *supra* at 584). Even had "Tom" appeared as a witness, he could not have rebutted Bushey's testimony that she and Morse saw each other at the intersection at about 5:30 P.M. on June 17, 1998, or that Morse yelled a vulgar threat at her from his car, especially given the earlier time Morse testified he was at the shop. (We take judicial notice of the fact that the location in Hudson to which Morse testified he drove from the shop at or after 5:30 P.M. is only a short distance from the intersection at which Bushey testified he encountered her at about 5:30 P.M. See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69-70 n.9 [1997] [judicial notice taken of street locations]). Morse also argues that counsel could have called his brother or "Sally" to "corroborate" the mitigating circumstances regarding his move from Berlin to Hudson. However, aside from the fact that he raises the issue for the first time on appeal, never having identified those individuals as potentially exculpatory witnesses at the hearing, in the absence of any showing what their potential testimony would be, as well as the suspect nature of their relationship with him, see *Commonwealth* v. *Grace*, 370 Mass. 746, 752 (1976); *Commonwealth* v. *Toney*, 385 Mass. 575, 579-580 (1982); *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 721 (1974), such speculative argument is to no avail.

and against the need for delay. See *Commonwealth* v. *Cavanaugh*, 371 Mass. at 50-51).

2. *Lack of preliminary hearing.* Relying on *Commonwealth* v. *Odoardi*, 397 Mass. 28, 33 (1986), Morse protests that he was given only a final probation hearing and not the preliminary hearing to which he was entitled and which the record does not show he waived. He asserts that his due process rights were thereby violated in a manner that was not harmless beyond a reasonable doubt because the error "contribute[d] to the [outcome]." It is sufficient to reject his conclusory contention by noting that Morse fails to explain how the lack of a preliminary hearing in fact contributed to the adverse outcome, i.e., how he was in any way prejudiced.

Indeed, *Odoardi* tilts against Morse on this very point. There, the probationer challenged the Notice of Surrender and Hearing(s), ordering him to appear in court on a certain date for a hearing on the charge that he had violated the terms of his probation, as constitutionally defective[7] because it failed to indicate whether the proceeding was to be a preliminary or a final revocation proceeding. While acknowledging that the notice was in fact "unclear," the court stated that

> "there was no confusion that the . . . hearing [when held] was a final hearing, and the record reveals no objection by the defendant to the adequacy of the notice. It does not appear that the defendant was in any way prejudiced by the type of notice given. . . . [D]efense counsel . . . assumed that it was a final, rather than a preliminary, revocation hearing. There was no element of surprise involved. It is therefore difficult to perceive how the probation authorities' failure to specify in the notice what type of hearing was to convene . . . could have affected the defendant adversely."

397 Mass. at 32.[8] See, in this regard, *Delisle* v. *Commonwealth*, 416 Mass. 359, 362-363 (1993), in which the probationer

---

[7] "[W]ritten notice of any claimed violations of [probation]" and "a preliminary and a final revocation hearing" are two of the minimal due process rights to which a probationer facing revocation of probation is entitled. See *Commonwealth* v. *Odoardi*, 397 Mass. at 31-34.

[8] The defendant in *Odoardi* also challenged on due process grounds the probation department's delay in commencing revocation proceedings until months after the scheduled termination of his probation. In a similar vein, the

contended that his due process rights were violated by receiving inadequate notice of the date of the revocation hearing and by being denied a continuance to retain counsel of his own choosing for the surrender hearing. The court rejected these contentions, on the same combined failure-to-raise-below and no-showing-of-prejudice bases as in *Odoardi*:

> "The [probationer] did not present this issue [as to the notice] to the [tribunal below], and it is therefore not properly before us. We note, nonetheless, that even if the [probationer] received inadequate notice . . . [his] failure to show any prejudice is fatal to his claim [citing *Odoardi*]. . . . [As to] the claim that he was denied a continuance to retain counsel . . . [t]he record contains no suggestion that the [probationer] requested [such] a continuance . . . . See [*Commonwealth* v.] *Durling*, [407 Mass. 108,] 112 [1990] (probationer not entitled to full panoply of protections applicable at criminal trial)."

A probationer's limited due process rights in connection with revocation proceedings, whether viewed as civil or quasi-criminal, are, as these authorities demonstrate, subject to both waiver (like any right, constitutional or otherwise) and harmless error analysis.[9] See *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999) (where the court rejected the defendant's appellate

court rejected the challenge because the probationer "points to no fact of record to indicate . . . that he was prejudiced thereby," 397 Mass. at 36-37, citing *Commonwealth* v. *Sawicki*, 369 Mass. 377, 387 (1975), which held, in similar circumstances, that, even if the right to a prompt probation revocation hearing were of constitutional dimension, "there is no indication on this record of *specific prejudice* to [the probationer] resulting from the delay" (emphasis added). See *Commonwealth* v. *Whooley*, 419 Mass. 421, 425 (1995) (even though probation authorities violated G. L. c. 279, § 3, in not holding revocation hearing within six months after a default warrant issued, "the defendant has not shown that he was prejudiced" thereby).

[9] "Waiver" in this sense is failure to bring an alleged error to the trial judge's attention for correction, thereby failing to preserve the right of appeal on the issue. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 22 n.1 (1999) (Greaney, J., concurring). The Supreme Judicial Court has recently indicated that even so-called "structural" constitutional errors may be waived if not timely objected to, *Commonwealth* v. *Burnett*, 428 Mass. 469, 476 (1998), with the possible exception of an instruction incorrectly describing the prosecution's burden of proof. *Id.* at 474-475. Cf. G. L. c. 277, § 47A ("In a criminal case, any . . . objection based upon defects in the institution of the prosecution . . . shall only be raised prior to trial and only by a motion in

challenge to the constitutionality of police no-knock entry into his home without a reasonable belief he was inside because he did not raise it below, stating that "[b]ecause the defendant did not alert the trial judge to this argument, the waiver doctrine precludes him from doing so on appeal," and quoting *Commonwealth* v. *Amirault*, 424 Mass. 618, 641 n.15 [1997], for the proposition that "a right that must be claimed[10] is not denied if it is not claimed, and the proceeding in which the claim is not made is, in that respect, wholly free from error"); *Davis* v. *Tabachnick*, 425 Mass. 1010 (1997) ("[W]e shall not address the merits of the plaintiffs' claims because there is nothing in the record before us that indicates that those claims were adequately raised and preserved in the [lower c]ourt proceedings.")

In light of the strength of the Commonwealth's evidence on the three alleged violations (two being admitted by Morse at the time and the third being acknowledged by him shortly thereafter), combined with the want of any valid defense thereto on Morse's part and his failure to make any showing of prejudice either below or here, it cannot be rationally concluded that a preliminary hearing prior to the final hearing on June 23, 1998, would have been of any material benefit to Morse. See *Commonwealth* v. *Brown*, 23 Mass. App. Ct. 612, 616-617 (1987) ("In the end . . . the axe fell because of the defendant's own admissions," notwithstanding " 'the defendant's arguments concerning [supposedly inadequate] notice and other procedural deficiencies as to the [revocation] hearing.' " As stated in a comparable situation, "There is little doubt on this record that, if the required hearing had been held, process [in that case, an arrest warrant] would [still] have issued." *Commonwealth* v. *Lyons*, 397 Mass. 644, 647 (1986) (in which the defendant claimed

conformity with the requirements of the [Mass.R.Crim.P.]. The failure to raise any such . . . objection by motion prior to trial shall constitute a waiver thereof . . ."); G. L. c. 231, § 119 ("No error . . . or defect in any ruling or order or anything done or omitted by the trial court . . . is ground for . . . disturbing a judgment or order unless . . . the error complained of has injuriously affected the substantial rights of the parties.")

[10]The Notice of Surrender and Hearing(s) expressly informed Morse that "[i]f you wish both [the preliminary and the final] hearings may be held at the same time . . . . [You] . . . may waive the preliminary hearing if you wish." As previously noted, Morse and his counsel were immediately made aware that they were involved in a formal evidentiary hearing to determine whether he had violated his probation but made no effort to alert the judge to any objection they might have had to the lack of a preliminary hearing.

reversible error from the Commonwealth's failure, in violation of G. L. c. 218, § 35A, to afford him a probable cause hearing to oppose the issuance of the arrest warrant).

Even without deciding whether the issuance of the warrant for Morse's arrest satisfied the underlying rationale of the preliminary hearing requirement,[11] and even giving him the benefit of the most stringent constitutional test in criminal cases,

[11] "[A] probationer is entitled to a preliminary hearing . . . to determine whether there is probable cause to believe that he has committed a violation of his probation." *Commonwealth* v. *Odoardi*, 397 Mass. at 33. That requirement involves only " 'some minimal inquiry' conducted by 'someone not directly involved in the case' to 'determine whether there is . . . reasonable ground to believe that the [probationer] has committed acts that would constitute a violation of [probation] conditions.' " *Stefanik* v. *State Bd. of Parole*, 372 Mass. 726, 728 & 729 n.4 (1977), quoting from *Morrissey* v. *Brewer*, 408 U.S. 471, 485 (1972). The court in *Stefanik* noted, quoting the United States Supreme Court in *Morrissey* v. *Brewer*, 408 U.S. at 487, 490, that courts "expressly eschew[] a rigid and mandatory approach: 'No interest would be served by formalism in this process' . . . [nor have the courts] 'create[d] an inflexible structure.' " *Id.* at 729-730. The ultimate goal of the procedural requirements is "providing an accurate determination whether revocation is proper." *Commonwealth* v. *Durling*, 407 Mass. at 108. The validity of a revocation process is not to be determined by whether it satisfies an inflexible "code of procedure," *id.* at 113, but rather by whether the probationer has received "fair treatment," *id.* at 116, which "depend[s] on the circumstances of each case." *Id.* at 114. A preliminary hearing is not required when the functional equivalent of a preliminary hearing has occurred. See *Stefanik*, 372 Mass. at 730-732 (defendant had received a bind-over probable cause hearing in the District Court). Cf. *Commonwealth* v. *Maggio*, 414 Mass. 193, 194-199 (1993) (final probation revocation hearing held on grand jury indictments, which are "sufficient to warrant a finding of 'probable cause to arrest [the] defendant,'" *id.* at 198, but are insufficiently reliable to be the sole basis for revocation of probation). Here, a warrant issued from the Clinton District Court on Bushey's percipient complaint for Morse's arrest. (Morse challenges neither the warrant nor the arrest.) To be valid, any arrest must be based upon probable cause, *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985), which can be predicated entirely upon reliable hearsay. *Commonwealth* v. *White*, 422 Mass. 487, 496-497 (1996). Although neither the warrant nor the transcript of the proceedings relating thereto have been included in the record appendix, they are entitled to a presumption of regularity, including a presumption that the warrant was issued by a disinterested magistrate and was based upon "probable cause supported by oath or affirmation as required by art. 14 of the Declaration of Rights of the Massachusetts Constitution [, by the Fourth Amendment to the United States Constitution] and by G. L. c. 276, § 22." *Commonwealth* v. *Baldassini*, 357 Mass. 670, 675 (1970). Cf. *Whitely* v. *Warden*, 401 U.S. 560, 568 (1971) (an arresting officer is "entitled to assume [that the warrant was issued upon] the information requisite to support an independent judicial assessment of probable cause").

harmlessness beyond a reasonable doubt,[12] we can state with confidence that any error that may have occurred by reason of the absence of a preliminary hearing was, on this record, unimportant to the point of insubstantiality and did not contribute in any meaningful way to the revocation ruling. See *Commonwealth* v. *Perez*, 411 Mass. 249, 260-261 (1991); *Commonwealth* v. *Owens*, 414 Mass. 595, 603-605 (1992); *Commonwealth* v. *Gibson*, 424 Mass. 242, 245-246 (1997); *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 (1999).

3. *Statement of reasons and evidence.* Morse finally asserts that his due process rights were violated by the failure of the judge to set forth a separate statement of the evidence he relied on to support the revocation of probation, either orally at the hearing or later in the judge's written "findings and orders." He speculates that the judge may have improperly relied upon an outstanding c. 209A restraining order Bushey had obtained against him, which was admitted in evidence over his objection that it was not a noticed basis for the revocation proceeding. Since that order is not contained in his record appendix, his conjecture thereon is unpersuasive, particularly in light of the fact that the judge did make a written finding, that "defendant violated his . . . probation . . . [by] contact with [the] victim [on] 6/17/98" — a finding plainly derived from Bushey's testimony.[13] To the extent the restraining order also prohibited contact, it would have been superfluous.[14]

Although a separate written statement of the evidence relied

---

[12]See *Commonwealth* v. *Harrison*, 429 Mass. 866, 868 & n.4 (1999) (assuming, without deciding, that such a standard was applicable); but see *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995) (the standard of proof in a revocation proceeding is the civil standard of proof by a preponderance of the evidence); *Commonwealth* v. *Durling*, 407 Mass. at 112 ("Revocation proceedings are not part of a criminal prosecution . . . [and] a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial").

[13]The judge manifestly credited Bushey and discredited Morse's purported alibi (a perceptive assessment, in light of Morse's subsequent virtual confession to having committed perjury at the revocation hearing). See *Commonwealth* v. *Tate*, 34 Mass. App. Ct. 446, 449-450 (1993) ("the judge was not required to accept any of the exculpatory reasons offered by the defendant," including the claim that an encounter on a public street in violation of a no-contact probation condition was innocent and coincidental).

[14]The Commonwealth included two restraining orders against Morse in its record appendix, both prohibiting his contact with the minor daughter of Hope Bushey, who obtained the orders, but it is not possible to conclude that either

on and the reasons for revocation is one of the probationer's due process rights in such proceedings, it is not an inflexible or invariably mandatory requirement and can be satisfied in other ways. See *Fay* v. *Commonwealth*, 379 Mass. 498, 504-505 (1980); *Commonwealth* v. *Durling*, 407 Mass. at 113-114 (transcription of revocation proceedings accurately reflecting the evidence relied on and reasons for revocation sufficient). See also note 11, *supra.* It is literally correct that the judge did not explicitly set forth the evidence he relied on (which we agree he preferably should have done). But this was a simple, straightforward case, and the entirety of the short transcript (aside from Morse's discredited false alibi) *is* that inculpatory evidence: Bushey's eyewitness account of their encounter and Morse's own admissions regarding his failures of required notifications. There is no reasonable basis on this record for a claim of unfair surprise or prejudice supposedly arising from the judge's reliance upon improper or inadequate evidence. Contrast *Commonwealth* v. *Maggio*, 414 Mass. at 197-199 (the only evidence introduced at revocation hearing were copies of grand jury indictments which contained none of the facts underlying them and also failed to refer to any of the evidence presented to the grand jury); *Commonwealth* v. *Michaels*, 39 Mass. App. Ct. 646, 648-649 (1996) (no evidence was introduced at revocation hearing except the fact that the defendant's probation had been revoked in another court for unknown violations of unknown conditions at unknown dates). Morse "had actual knowledge of the 'evidence relied on and [the] reasons for revoking [his probation],' " and fundamental due process was not violated in

was the document referred to in the transcript. One is a certified copy of an order that appears on its face to have expired in December 1997; while the other is uncertified and has a typewritten expiration date of "1/8/98" that has been altered by an unknown hand to "1/8/99," which would create an illegal period of time for the effectiveness of that order, dated "12/23/97." See G. L. c. 209A, § 2 (relief is "not to exceed one year"). To the extent the restraining order referred to in the transcript arose out of new or additional misconduct by Morse, it would not have been irrelevant to the judge's discretionary determination whether or not to revoke Morse's probation if the judge was satisfied that Morse was in violation of any probationary conditions. See *Commonwealth* v. *Durling*, 407 Mass. at 111. "One of the primary purposes of probation is to rehabilitate the offender. An offender who continues to violate the law is obviously not being rehabilitated. The Commonwealth has an interest in imposing effective punishment on a convicted criminal when rehabilitation is not possible." *Id.* at 116.

that respect. *Fay* v. *Commonwealth*, 379 Mass. at 504-505, quoting from *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973).

The only questions in this case are whether Morse received his minimal due process rights, or their functional equivalent; whether the record discloses sufficient reliable evidence to warrant the findings by the judge that Morse had violated the specified conditions of his probation; and whether the basic due process goals, of providing "fair treatment" to the probationer and an accurate basis for determining whether revocation was proper, were achieved. See *Commonwealth* v. *Durling*, 407 Mass. at 113-114, 116. We conclude that those questions can confidently be answered affirmatively. "All that is [otherwise] required for revocation of probation is that the court be satisfied that the probationer has abused the opportunity given him to avoid incarceration." *Rubera* v. *Commonwealth*, 371 Mass. 177, 181 (1976), quoting from *Roberson* v. *Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974). The judge below was properly so satisfied, and so are we. The order revoking Morse's probation is therefore affirmed.

*So ordered.*