COMMONWEALTH *VS.* MARK A. DUBOWSKI.

No. 01-P-1737.

Worcester. February 4, 2003. - June 11, 2003.

Present: PERRETTA, GRASSO, & BERRY, JJ.

*Practice, Criminal,* Probation, Revocation of probation.

The failure of the judge at a probation violation proceeding to adhere to the
    bifurcated procedure required by rules 5(b) and 7(a) of the District Court
    Rules for Probation Violation Proceedings (2000), and to enter the viola-
    tion finding before receiving certain testimony relevant to disposition, did
    not require reversal of the probation revocation, where the judge expressly
    stated that he was receiving the testimony only as to disposition, and
    where the judge's findings on their face confirmed that the judge did not
    base the probation violation on the testimony and were in accord with the
    great weight of the independent evidence; furthermore, the basic due
    process goals, of providing "fair treatment" to the probationer and an ac-
    curate basis for determining whether revocation was proper, were achieved.
    [296-297]
The evidence at a probation violation hearing was sufficient to establish a
    violation of the term of the defendant's probation that he have no contact
    with unrelated children. [297-298]
This court declined to reach an argument that the defendant first raised on ap-
    peal from a probation violation hearing, seeking to distinguish the term
    "no affiliation" from "no contact." [298-299]

COMPLAINTS received and sworn to in the East Brookfield
Division of the District Court Department on March 24, 1998,
and April 24, 1998.

A probation violation proceeding was heard by *Charles A.
Abdella,* J.

*William S. Smith* for the defendant.

*Brian J. Cann,* Assistant District Attorney, for the
Commonwealth.

BERRY, J. In this appeal, the defendant claims that the revoca-
tion of his probation and the imposition of a two-year commit-
ted term should be set aside because the District Court judge

did not formally bifurcate the probation violation hearing into two stages, as dictated by rules 5(b) and 7(a) of the District Court Rules for Probation Violation Proceedings (2000) (probation rules).[1] In accord with these rules, a judge presiding over a probation violation hearing is to conduct a dual analysis. In the first stage, the judge is to determine the issue of, and enter findings with respect to, whether a violation of probation has been proved; in the second stage, the judge is to consider and determine the appropriate disposition. The probation rules, which became effective in 2000, crafted this two-stage procedure "to clarify the important difference between adjudicating the factual issue of whether a violation has occurred and the court's dispositional decision following such adjudication." Commentary to rule 1 of the District Court Rules for Probation Violation Proceedings (2000).

In this case, the judge did not precisely follow the two-stage process in that, before stating on the record his finding of a probation violation, the judge heard testimony which was directed to disposition. Although we think the probation rules speak of an explicit statement of a violation finding before the receipt of such dispositionally related evidence, we do not read the rules as mandating reversal where, as here, there was an implicit and functionally equivalent finding of a violation before the presentation of the dispositional information. Because the record clearly reflects that the judge received, and considered, this testimony only with respect to sentencing, we do not accept the defendant's argument that the failure to record the violation finding before accepting this information constituted an error warranting reversal.

1. *Procedural and factual background.* In May, 1998, the defendant pleaded guilty to sex offenses involving his ten year

---

[1]Rule 5(b) provides in pertinent part that "[p]robation revocation hearings shall proceed in two distinct steps, the first to adjudicate . . . whether the alleged violation . . . occurred, the second to determine the disposition of the matter, if a violation . . . is found . . . ." Rule 7(a) provides that "[u]pon the completion of the presentation of evidence and closing arguments on the issue of whether the probationer has violated one or more conditions of a probation order, as alleged, the court shall make a determination of that issue. The court shall decide the matter promptly and shall not continue the proceeding generally."

old son. The resulting convictions were for an unnatural and lascivious act with a child under the age of sixteen (G. L. c. 272, § 35A), lewd and lascivious speech or behavior (G. L. c. 272, § 53), and indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B) (the first convictions).[2] In connection with a series of other sex offenses involving his sixteen year old niece, later in 1998 the defendant also pleaded guilty to indecent assault and battery on a person fourteen years of age or over (G. L. c. 265, § 13H), lewd and lascivious speech or behavior (G. L. c. 272, § 53), and open and gross lewdness (G. L. c. 272, § 16) (the second convictions).

On the second convictions, the defendant was sentenced to two years of probation to run "on and after" the sentence on the first convictions. In addition to the general conditions of probation, an additional condition was that the defendant participate in psychological evaluation and counseling, as deemed necessary by the probation department. Finally, as most pertinent to this appeal, at the sentencing hearing, the judge indicated that a condition of probation would be that the defendant have no contact with his son and niece, and that "during . . . probation [the defendant] agree that [he] will not volunteer to be in any organization or affiliate [himself] in such a way that [he] would be in contact with unrelated minors." The defendant assented to this no-contact condition. Accordingly, in conformity with the judge's statement of disposition at the original sentencing hearing, the conditions set forth in the probation form, which the defendant signed, stated in pertinent part that the defendant was to have "[n]o contact with victims" and engage in "[n]o volunteer work with unrelated minors or contact with unrelated minors."

On April 1, 2000, upon the defendant's release from incarceration on the first convictions, he became subject to the probationary terms and conditions arising out of the second convictions. On May 11, 2001, a notice of probation violation issued, alleging that the defendant "had contact with unrelated minors on various dates between [April 3, 2000,] and [May 11, 2001]."

The probation officer opened the August 21, 2001, probation

---

[2]For the first convictions, on the unnatural act charge, the defendant was sentenced to two and one-half years committed to the house of correction; the sentences on the other two charges were concurrent with that sentence.

violation hearing with a summary of the evidence concerning
the alleged violations, including the officer's personal observa-
tions of evidence indicating the presence of young children in
the defendant's house. Following the probation officer's sum-
mary, the Commonwealth presented three percipient witnesses
who, among other things, testified to instances of the defendant's
contact with young children. The defendant and his current wife
testified. The essence of their testimony — which was contrary
to certain of the other direct evidence — was that any young
children present in the house were "related" to the defendant
and, in any event, the defendant was not alone with any child or
youth.[3]

Following receipt of this testimony regarding the alleged
violation, the hearing judge (who was not the original sentenc-
ing judge) asked if the probation officer had a recommendation
on disposition and whether witnesses were present who wished
to address the court on disposition. The defendant's former wife
came forward. She briefly testified concerning the continuing
trauma that her son was enduring due to his prior molestation
by the defendant, his father.[4]

---

[3]As shall be discussed in part 3 of this opinion, the defendant's claim of
contact only with children related to his wife does not address his other
contacts with wholly unrelated children.

[4]The following discussion occurred during the hearing:

> PROBATION OFFICER: "I do have his ex-wife here, the mother of the victim
> from the original case that he served the two and a half years on."
>
> DEFENSE COUNSEL: "Again Your Honor that's not relevant at all."
>
> THE COURT: "That's (inaudible)."
>
> PROBATION OFFICER: "They were noted as the victims on this case and I
> did have to notify her obviously of what was going on because of that.
> She has come today and she's asked if she could address the Court on
> the issue of [d]isposition if he's found in violation."
>
> THE COURT: "Do you have recommendations on [d]isposition on behalf
> of the Probation Department?"
>
> . . .
>
> THE COURT: "Does any party wish to address the Court. I'd hear them
> now."
>
> PROBATION OFFICER: "[That] would be [the defendant's] former wife."

The former wife then described the continuing trauma that her son was suf-

Closing remarks followed by both the probation officer and defense counsel. Thereafter, the judge recorded his finding that the defendant, "a convicted sex offender, had continuous [and] diverse contact [with] minor children after his release from [the house of correction and] violated [a] court order [and] is [a] risk to [the community]. CONTACT was with related [and] unrelated young boys [and] girls." The judge expressly found that the defendant had violated the probationary terms by having had contact with minor children (two girls who were four years old and another girl who was two years old), such contact having occurred at home, at a nursery school, and at a friend's house. The judge revoked probation, and sentenced the defendant to two years in the house of correction.

2. *The procedural challenge.* The defendant contends that the judge erred by not adhering to the bifurcated procedure required by probation rules 5(b) and 7(a), and in failing to explicitly enter the violation finding before hearing from the defendant's former wife, who spoke to matters relevant to disposition. That the judge delayed entry of the violation finding is so. However, the judge expressly stated on the record that he was receiving the former wife's evidence only as to disposition. His findings on their face confirm that the judge did not base the probation violation on the former wife's testimony. To the contrary, the judge's findings are in accord with the great weight of the evidence, and the judge's determination of a violation of the probationary terms was based upon, and supported by, the independent evidence provided by the witnesses concerning the defendant's contact with children. Thus, notwithstanding that the judge did not formally break the sequencing of the hearing into two stages, review of the transcript persuades us that the noncompliance with such a bifurcated structure, as envisioned in the probation rules, did not harm the defendant, and that the former wife's brief testimony did not unfairly taint the proceedings. (Her testimony spans only two pages of the transcript of the hearing, which covers sixty-three pages).

For these reasons, while we do not condone departure from

---

fering as a result of his molestation by the defendant.

these procedural rules, which exist for good reason, we reject the defendant's argument that there was error here of a magnitude requiring reversal. Cf. *Commonwealth* v. *Cavanaugh*, 12 Mass. App. Ct. 543, 545 (1981) (procedural flaw in plea hearing does not invalidate plea, where "the circumstances compel the conclusion that the defendant did enter a plea of guilty and that the plea was accepted by the judge"); *Commonwealth* v. *MacDonald*, 53 Mass. App. Ct. 156, 161 (2001) (absent showing to contrary, judge presumed to have disregarded evidence irrelevant to violation determination). Furthermore, "the basic due process goals, of providing 'fair treatment' to the probationer and an accurate basis for determining whether revocation was proper, were achieved." *Commonwealth* v. *Morse*, 50 Mass. App. Ct. 582, 594 (2000). See *Commonwealth* v. *Durling*, 407 Mass. 108, 113 (1990). See also *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972); *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973).

3. *The challenge to the sufficiency of the evidence.* The defendant also contends that the evidence was insufficient to establish a violation of the probation terms because (by the defendant's definition) his contact was with "related children," e.g., his current wife's grandniece and great-nephews. (The current marriage occurred while the defendant was in prison serving time on the first convictions). However, even assuming, arguendo, that the defendant's reading of the term "related" is tenable (a somewhat dubious proposition),[5] the point is immaterial. As the defendant concedes in his brief, not all the children with whom he had contact were related to his current wife (and indirectly to him) either by consanguinity or marital affinity. To the contrary, the Commonwealth presented evidence that the defendant had contact with children wholly unrelated to

---

[5]The probation officer testified that, during a home visit, she saw a child's seat and toys. The officer inquired of the defendant why these things were there. The defendant responded that the toys were there because his wife babysat for her niece. The probation officer informed the defendant of her opinion that the niece was not related within the meaning of the probationary term because the defendant had not been married to his current wife at the point of sentencing. The defendant was, thus, on notice of the probation department's construction of the term "related," which was contrary to that upon which the defendant relied in defense at his revocation hearing.

him or his wife. Two witnesses testified that, within the pertinent probationary period, they had seen the probationer in contact with the two and four year old daughters of an "old, old friend" of the defendant's wife. Hence, the two girls were unrelated to the defendant, even by his definition.

4. *The semantic challenge.* For the first time on appeal, the defendant argues that the violation determination cannot stand because the words "no contact," appearing in the probation form, were not part of the terms set by the original sentencing judge. Instead, the defendant argues that the judge had merely ordered the defendant to have "no affiliation" with unrelated minors. The defendant goes on from there to offer a convoluted argument seeking to distinguish the term "no affiliation" from "no contact." We need not probe the etymology of the words or their interconnection in this case, because the issue, not having been raised below, is waived.

In any event, were we to reach this claim, the defendant would still not prevail. At the original sentencing hearing, the judge specifically referenced "no contact" as a term of probation. Thus, we reject the defendant's argument that the probation form improperly amended the judge's orders on probation.[6] The defendant's reliance on *Commonwealth* v. *Mac-Donald*, 435 Mass. 1005, 1006-1007 (2001), does not carry the point, for in that case the terms of the probation form differed from those stated by the sentencing judge. That is not so in this

---

[6]The colloquy with the judge at the original sentencing hearing reflects that the prosecutor was seeking to bar contact by the defendant with unrelated minors. Beyond this bar, the prosecutor and judge, in a continuing dialogue, also referred to a prohibition on the defendant becoming affiliated with any youth group activities. This latter prohibition against affiliation is not to be read, as the defendant suggests, to somehow free the defendant to have contact with unrelated minors. The pertinent discussion at the sentencing hearing went as follows:

PROSECUTOR: "We'd ask that there be a no contact order with [the two victims]. Also, Judge, I'd ask that there be permission for the Probation Department to enforce the no contact order with this defendant and other unrelated minors, please."

THE COURT: "(Inaudible.)"

PROSECUTOR: "Well, I'd ask it be worded as professionally or socially, that he's not to work in certain positions or socialize. Obviously, casual

case. Furthermore, the defendant here was cognizant of the terms of his probation and he signed the probation form, which, inter alia, specifically recited that the defendant was prohibited from engaging in "volunteer work with unrelated minors or contact with unrelated minors."

*Order revoking probation and imposing sentence affirmed.*

---

contact wouldn't be a problem."

THE COURT: "Okay. So you're suggesting, for example, to volunteer as a Boy Scout trooper leader or a baseball coach or something? Is that what you mean when you make —"

PROSECUTOR: "Those are the things that I think should be prohibited."

THE COURT: "Not to stay out of supermarkets because there may be —"

PROSECUTOR: "No. He has to go into a supermarket, but those first few things, yes."

THE COURT: "I will, if you [the defendant] so consent, . . . order specifically as a term of your probation you have no contact with [the two victims] and that you promise during the period of time that you're on probation and agree that you will not volunteer to be in any organization or affiliate yourself in such a way that you would be in contact with unrelated minors. It would also be a term of your probation if you so say. Do you so consent?"

THE DEFENDANT: "That's fine."