NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13243

COMMONWEALTH  vs.  JEROME JARRETT.


Suffolk.      September 9, 2022. - March 10, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Practice, Criminal, Revocation of probation, Identification of
     defendant in courtroom.  Identification.  Evidence,
     Identification.  Due Process of Law, Identification.
     Controlled Substances.



     Indictments found and returned in the Superior Court
Department on June 10, 2016.

     A proceeding for revocation of probation was heard by
Robert L. Ullmann, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Joseph Visone for the defendant.
     Monica J. DeLateur, Assistant District Attorney, for the
Commonwealth.
     Patrick Levin, Committee for Public Counsel Services, &
Radha Natarajan, for Committee for Public Counsel Services &
another, amici curiae, submitted a brief.

GEORGES, J.   The probationer, Jerome Jarrett, appeals from a Superior Court judge's order revoking his probation and imposing the remainder of his suspended sentence.   The probationer challenges the determination that he violated the terms of his probation.   In particular, he argues that the judge could not have found him in violation without relying upon an unreliable, in-court identification by a witness who had made no prior, out-of-court identification.   The probationer asks us to extend the rule excluding such identifications in criminal trials without a showing of good reason, see Commonwealth v. Crayton, 470 Mass. 228, 241 (2014), to probation violation hearings, because such identifications are just as inherently suggestive and unreliable at those proceedings as they are in a criminal trial.   The probationer also challenges the sufficiency of the evidence that he violated the terms of his probation by committing a new criminal offense.

We decline to extend Crayton, 470 Mass. at 241, to probation violation hearings.   In addition, we conclude that sufficient evidence was presented at the hearing for the judge to find, by a preponderance of the evidence, that the

probationer had violated a term of his probation by committing a new offense.[1]

1. Background. In September of 2018, the probationer pleaded guilty to two counts of attempting to derive support from a prostitute, in violation of G. L. c. 274, § 6. He was sentenced to a term of two and one-half years in a house of correction, with two years to serve and the balance suspended for eighteen months, with conditions of probation. Among those conditions were that the probationer stay away from children under the age of sixteen who were not family members and obey all local, State, and Federal laws. Because the probationer had been held in pretrial detention for 763 days while awaiting trial, the two years were deemed served.

In June of 2019, the probation department issued a notice of surrender based, in part, on allegations that the probationer had violated a term of his probation by committing a new offense related to the distribution of cocaine. A Superior Court judge held a probation violation hearing on November 22, 2019. The evidence at the hearing consisted primarily of the testimony of Boston police Officer Shana Rivera. The judge also considered several exhibits introduced by the Commonwealth: the notice of

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the New England Innocence Project.

violation, the order of probation, and a summary of the probationer's financial information. Based on the evidence presented, the judge could have found the following.

At around 1:30 P.M. on the afternoon of June 17, 2019, Rivera and her partner, Officer Chris Adams, were patrolling in an area of downtown Boston that included Tremont, Winter, and Summer Streets. Rivera had been employed as a police officer for three years and had received specialized training on identifying controlled substances and identifying drug transactions.

While on routine patrol, Rivera saw Gregory Gomes, whom she knew to be a drug user, and an unknown white male, later identified as Sean McCarthy, following a tall, thin Black male with a red shirt and a "man bun,"[2] walking into a nearby mall. Rivera then saw McCarthy hand Gomes a sum of money. Rivera testified that, once Gomes noticed her and Adams, he started walking quickly and met the probationer immediately inside the mall doors. All three men left the mall within approximately one minute from when they entered, from which Rivera inferred that they had not been in the mall to shop. The probationer headed toward Tremont Street, while McCarthy and Gomes walked

---

[2] A man bun is "a hairstyle for men, comprising long hair looped into a bun and fixed in position with a hair tie." Macquarie Dictionary (7th ed. 2017).

toward Washington Street.  Rivera and Adams followed McCarthy and Gomes to Bromfield Street, where they observed Gomes hand McCarthy an object later learned to be a piece of "crack" cocaine.

The officers then followed McCarthy and Gomes into Wesleyan Place, a location known as a place for drug users to consume drugs.  When McCarthy entered a no-trespassing area, Rivera stopped him and found that McCarthy had a piece of crack cocaine and a crack pipe on his person.  McCarthy told her that he had obtained it from Gomes, who had received it from a tall Black male with a red shirt and dreadlocks.  Gomes fled as soon as he saw the officers stop to talk to McCarthy.[3]

Rivera returned to the mall, where she saw the probationer. Upon seeing Rivera and Adams, the probationer rushed into a nearby gym.  The officers followed the probationer inside and stopped him.  They found a digital scale and $292 of currency on his person.  Rivera testified that the man she had arrested was the same man she had seen with Gomes and McCarthy shortly before, i.e., the tall, thin, Black male wearing a red shirt and with "dreads" formed into a "man bun," whom she identified at the hearing as the probationer.

---

[3] Gomes and McCarthy subsequently were issued summonses for possession of a class B substance.

The judge concluded that there was an "extremely strong" circumstantial case to support a finding, by a preponderance of the evidence, that the probationer had violated the terms of his probation by committing a new offense. Subsequently, on January 3, 2020, the judge found the probationer in violation of probation, revoked his probation, and ordered him to serve the remaining six-month balance of his committed sentence. The probationer filed a timely notice of appeal in the Superior Court and then filed an appeal in the Appeals Court. We transferred the case to this court on our own motion.

2. Discussion. a. Standard of review. A judge's decision to revoke probation involves a two-part inquiry: the judge must determine first whether the probationer willfully has violated a condition of probation and, second, if such a violation is found by a preponderance of the evidence, whether the violation warrants revocation of probation. See Commonwealth v. Eldred, 480 Mass. 90, 101 (2018), and cases cited. In considering an appeal from a decision that a violation of probation occurred, a reviewing court must determine "whether the record discloses sufficient reliable evidence to warrant the findings by the judge[, by a preponderance of the evidence,] that [the probationer] had violated the specified conditions of his [or her] probation." See Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000).

The court reviews a determination to revoke probation for an abuse of discretion.  See Eldred, supra.

b.  Applicability of Crayton.  The probationer argues that Crayton's rule precluding in-court identifications in criminal trials absent good reason, where there was no prior out-of-court identification, see Crayton, 470 Mass. at 241, should be extended to other proceedings where liberty is at stake.  We do not agree.

In Crayton, 470 Mass. at 241, we held that "[w]here an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court identification as an in-court showup, and shall admit it in evidence only where there is 'good reason' for its admission."  "Good reason" may exist where "the eyewitness was familiar with the defendant before the commission of the crime, such as where a victim testifies to a crime of domestic violence," or "where the witness is an arresting officer who was also an eyewitness to the commission of the crime."  Id. at 242.  In both circumstances, the identification is only "confirmatory" in nature, as the jury will understand the in-court showup as indicating that "the defendant sitting in the court room is the person whose conduct is at issue rather than as identification evidence."  Id.  "[I]n both of these circumstances, where the witness is not identifying the defendant based solely on his or

her memory of witnessing the defendant at the time of the crime, there is little risk of misidentification arising from the in-court showup despite its suggestiveness."  Id. at 243.

Pragmatic concerns specific to criminal trials, and "[c]ommon law principles of fairness," guided our reasoning in adopting this approach (citation omitted).  See id. at 240, 241 n.16.  More specifically, we recognized three key distinctions between in- and out-of-court identifications in the context of a criminal trial.  First, with an in-court identification, the jurors serve collectively as the fact finder and see the identification procedure as it unfolds.  Therefore, a juror is "better able to evaluate the reliability of the identification because he or she can observe the witness's demeanor and hear the witness's statements during the identification procedure."  Id. at 239.  The juror also can note "indications of witness certainty or hesitation during [that] process, including facial expression, voice inflection, and body language" (citation omitted).  Id.  Second, an in-court identification benefits from immediate challenge through cross-examination.  Id. at 240.  Third, because defense counsel has advance notice of the Commonwealth's intended in-court identification, counsel has the opportunity to propose less suggestive identification procedures.  Id. at 241.

We recognized, however, that neither immediate cross-examination nor the jury's ability to observe the identification in person guarantees an accurate identification.  Id. at 240-241.  Accordingly, we limited the use of in-court identification of a defendant, where a witness had never made a nonsuggestive out-of-court identification, to situations in which there was "good reason" to use such a procedure.  Id. at 241-242.  We also left open to defendants the ability to challenge the use of an in-court identification even where there was good reason for its use.  Id. at 243.  Notably, however, we did not adopt the approach followed by courts in other jurisdictions that places the burden on the defendant to propose less suggestive in-court identification procedures.  Id.

As stated, Crayton, 470 Mass. at 241-243, addressed the introduction of in-court, showup identifications at criminal trials.  Probation violation hearings, however, are not one of the stages of a criminal prosecution.  See Commonwealth v. Durling, 407 Mass. 108, 112 (1990).  Thus, a probationer is not entitled to all of the due process protections applicable at a criminal trial.  Id.  In addition, at a probation violation hearing, a judge acts as the fact finder and is able to assess an in-court identification, in conjunction with the other evidence presented, to determine whether the evidence contains substantial indicia of reliability.  The judge can make the same

observations of a witness's hesitancy or uncertainty that we concluded in Crayton, supra at 238-244, that a jury could make at a criminal trial, but without the same likelihood of being influenced by an identification that might appear unnecessarily suggestive to a jury, based on the witness's apparent confidence, see id.

Moreover, at a probation violation hearing, concerns about injustice due to a potentially unreliable in-court identification are significantly reduced and conditional; "[w]hen an individual is on probation, the Commonwealth has already gone through the expense and effort of convicting him [or her]." Durling, 407 Mass. at 115-116. A probationer is released on probation, rather than having been incarcerated, as a "matter of grace." Id. at 115. Nonetheless, while probationers have fewer and "more flexible" due process rights at a probation violation hearing than do defendants at a criminal trial, those constitutional rights probationers do possess are protected with "equal vigilance." See Commonwealth v. Kelsey, 464 Mass. 315, 319 (2013).

In Durling, 407 Mass. at 113, this court examined at some length the minimum requirements of due process applicable at probation violation hearings, in reliance on the Federal requirements set forth by the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). The court

explained that, to comport with due process, a probationer must be provided with at least "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him [or her]; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."  Durling, supra, quoting Gagnon, supra.  See Commonwealth v. Hartfield, 474 Mass. 474, 479 (2016).

At the same time, given the differing concerns at a probation violation hearing, where the probationer already has been found guilty of the underlying offense beyond a reasonable doubt and is not at risk of conviction of any new offense, and a criminal trial, where the Commonwealth must prove a defendant's guilt beyond a reasonable doubt, probation violation hearings do not afford probationers the full panoply of constitutional protections afforded a defendant at a criminal trial.  See Abbott A. v. Commonwealth, 458 Mass. 24, 34 (2010), citing Durling, 407 Mass. at 114-120.  In particular, probation

violation hearings are not subject to the rule against the introduction of hearsay.  See Abbott A., supra.

The question we must address here is whether due process requires us to extend the protections against in-court showup identifications of defendants at criminal trials to probation violation hearings.  Given the flexible due process standard applicable to probation violation hearings, and given that the judge acts as the fact finder, in-court identifications may be introduced without arbitrarily depriving the probationer of his or her (attenuated) liberty interest.  Accordingly, we conclude that the "good reason" standard set forth in Crayton, 470 Mass. at 238-244, regarding in-court showup identifications does not apply to probation violation hearings.[4]

c.  Reliability of the in-court identification.  Although we conclude that the requirements of Crayton, 470 Mass. at 241-243, are inapplicable here, that does not end our inquiry.  The

---

[4] The Commonwealth asks us, in effect, to broaden the type of testimony Crayton's "good reason" standard permits.  More specifically, the Commonwealth contends that if Crayton, 470 Mass. at 238-244, is applicable to probation violation hearings, Rivera's in-court identification of the probationer as "being the person she saw near the [mall] being followed by Gomes and McCarthy," and the "person she arrested who had a digital scale and money on his person," would have been permissible, because she did not actually see an exchange of drugs for money.  In the Commonwealth's view, Rivera was not a percipient witness within the meaning of Crayton, supra, because she did not personally observe the probationer commit the offense for which he was arrested.  Because we conclude that Crayton is not applicable to probation violation hearings, we need not reach this issue.

"touchstone" of an "accurate and reliable determination," which underpins the due process question of fundamental fairness, remains. See Durling, 407 Mass. at 117-118. The probationer argues that, absent a nonsuggestive identification by McCarthy at the time of the probationer's arrest, Rivera's in-court identification was "inherently unreliable." We do not agree.

As stated, at a probation violation hearing, somewhat different concerns animate the inquiry concerning fundamental fairness from those at trial. At such a hearing, the concern is whether an in-court identification is substantially reliable, and not whether there was "good reason" for the introduction of evidence that could appear to a jury to be worthy of an inflated level of confidence, due to the inherently suggestive nature of a showup identification. Where evidence bears "substantial indicia of reliability," admission of the evidence furthers the shared interests of the Commonwealth and the probationer in reaching "a reliable, accurate evaluation of whether the probationer indeed violated the conditions of his [or her] probation." Durling, 407 Mass. at 116, 118. In making such a determination, the judge is guided by the principles that pervade all questions of due process and must carefully define the various interests involved and then balance those according to the weight society places on them. Id. at 115.

Although, as the probationer argues, the Commonwealth's case would have been strengthened by a nonsuggestive identification of him by McCarthy at the time of the arrest, its absence is not fatal to a determination of reliability. See Commonwealth v. Wilcox, 446 Mass. 61, 67-68 (2006). Police officers may be the only witnesses at probation violation hearings, even where they report on statements by others, and the proceeding may still comport with due process. See, e.g., Commonwealth v. Bukin, 467 Mass. 516, 520 (2014). "[I]f reliable hearsay is presented, the good cause requirement is satisfied." Id. at 522, quoting Commonwealth v. Negron, 441 Mass. 685, 691 (2004). Indeed, in Durling itself, the probationer was found in violation of a term of his probation by having committed a new crime, based on testimony by his probation officer reading from two police reports and the introduction of those reports; the probation officer had not been a witness to any part of the events described in the reports. See Durling, 407 Mass. at 110.

Here, Rivera provided a detailed account of the incidents she observed on the day of the probationer's arrest, including her observations of a man whose description matched that of the probationer. Rivera testified that she was on routine patrol in an area she believed, based on her experience, to be one where drug transactions and drug use were frequent. She saw an

unknown man hand money to someone whom she knew to be a drug user; the two followed a man who matched the description of the probationer into a mall and left within a minute. Rivera then saw the man she knew to be a drug user hand something to the unknown man. She followed the suspected buyer, stopped him, and found crack cocaine on his person. He told her that he had asked the known drug user for drugs and had received them from someone matching the description of the man the two had followed into the mall. When that man saw officers approaching, he rushed into a building. They followed him, arrested him, and seized a digital scale and $292 in cash from his person. Rivera testified that the man, whom she described as a tall, thin, Black man with a red shirt and a man bun, was the same one she had seen entering the mall followed by the others. In these circumstances, the in-court identification was sufficiently reliable to be considered among the other evidence presented.

d. Sufficiency of the evidence. Relatedly, the probationer also challenges the sufficiency of the evidence that he violated the terms of his probation by committing a new crime, i.e., that he distributed cocaine. At a probation violation hearing, the Commonwealth bears the burden of proving a violation of a condition of probation by a preponderance of the evidence. Bukin, 467 Mass. at 520. We review a decision to

revoke probation for an abuse of discretion.  See <u>L.L</u>. v.

<u>Commonwealth</u>, 470 Mass. 169, 185 n.27 (2014).

Here, the judge properly focused on the reliability of the in-court identification when deciding what weight it was due. Contrary to the probationer's argument, the judge did not rely solely on the hearsay evidence concerning McCarthy's reported statements; Rivera testified to numerous direct observations she made at the time of the offense that supported a determination, by a preponderance of the evidence, that the probationer had participated in the distribution of cocaine, a controlled substance.

In conjunction with the other evidence introduced, Rivera's in-court identification of the probationer provided sufficient, substantially reliable evidence for the judge to conclude, by a preponderance of the evidence, that the probationer "more likely than not violated the conditions of his probation."  See <u>Commonwealth</u>. v. <u>Kelsey</u>, 464 Mass. 315, 324 (2013).

3.  <u>Conclusion</u>.  The order finding the probationer in violation of his probation and revoking his probation is affirmed.

<u>So ordered</u>.