COMMONWEALTH vs. WILLIAM S. HABAREK.

Suffolk.  March 7, 1988. — April 6, 1988.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Continuance, Argument by prosecutor. *Search and Seizure,* Automobile. *Constitutional Law,* Waiver of constitutional rights, Self-incrimination. *Evidence,* Redirect examination.

The judge at a criminal trial did not abuse his discretion in denying the defendant's motions for a writ of protection and a continuance. [108]

Although police officers had grounds for a warrantless search of a defendant's motor vehicle at the scene of his arrest, after they observed a sawed-off shotgun in plain view therein, the police acted properly in obtaining a warrant the next day before completing the search. [108-109]

At a criminal trial there was no error in admitting a police officer's testimony that the defendant, while in custody after his arrest, had exercised his constitutional right to end an interrogation, where the testimony was permissible, on direct examination, in the context of the witness's entire conversation with the defendant and, on redirect, as a response to inferences left by defense counsel on cross-examination, and where the defendant's assertion of his right was at no time used as evidence of his guilt or to impeach his explanations subsequently offered at trial. [109-110]

Although a prosecutor should not use rhetorical questions during closing argument, where they could be perceived by the jury as shifting the Commonwealth's burden of proof, the brief comments, "Why? Why does a person do that?" referring to a sawed-off shotgun, were not improper in the context of a prosecutor's entire closing argument at a murder trial. [110-111]

INDICTMENTS found and returned in the Superior Court Department on November 19, 1984.

The cases were tried before *James P. Donohue*, J.

*John J. Courtney* for the defendant.

*Abbe L. Ross*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. On November 27, 1985, after a trial by jury, the defendant was found guilty of murder in the first degree and of

unlawfully possessing a shotgun with a barrel less than eighteen inches in length. He was sentenced to two concurrent life terms at the Massachusetts Correctional Institution at Cedar Junction. The defendant appeals from the convictions on the grounds that: (1) the judge abused his discretion in denying the defendant's motions for a writ of protection and a continuance; (2) the trial judge erred in denying the defendant's motion to suppress; (3) the trial judge erred in allowing a witness to testify about the defendant's claim of his right to end an interrogation and remain silent; (4) there were errors in the prosecutor's closing argument, and (5) a review of the case pursuant to G. L. c. 278, § 33E (1986 ed.), requires reduction of the verdict to murder in the second degree. We reject each of the arguments and affirm the convictions.

From the evidence presented at trial, the jury could have found that at approximately 1 A.M. on October 13, 1984, Deborah DeGrandis was driven to her home at 21 Pond Street in Dorchester by her boyfriend, Joseph Joyce (victim). When they pulled up to the curb and stopped, DeGrandis reached to the floor of the automobile for her pocketbook and heard her boyfriend say, "What the . . . ." As she turned to look, she saw the barrel of a shotgun pointed at the driver's side window. When she heard Joyce say, "[G]et out," she opened the passenger side door, slipped out of the automobile, and ran up Edison Green Street. She heard shots as she was running away.

Three other residents of Pond Street witnessed the shooting. Virginia Morad of 19 Pond Street was awakened by a loud noise at 1:10 A.M. She went to her window and saw a man pointing and firing a gun into a station wagon, and a young girl running up Edison Green Street, crying hysterically. She described the gunman as a white male of average height, wearing a dark "leatherette" type jacket. After the shots were fired, she watched the man walk to a maroon automobile parked nearby and drive away.

Kevin Lee, a former police officer, heard a shotgun blast outside his home at 11 Pond Street. He went to his window and observed a white male, thirty to thirty-two years old, wearing a dark jacket, standing two feet from a station wagon,

and holding what appeared to be a sawed-off shotgun. He saw the man fire at the windows of the automobile, shattering the glass. He then watched the assailant enter a maroon Mercury automobile and drive away. He looked for, but could not see, a registration plate on the escaping vehicle.

A fifteen year old girl who lived at 17 Pond Street also observed the shooting. She was looking out her window when the victim pulled up to the curb in his station wagon. She witnessed a man in a black jacket pull up in another automobile, open his trunk, and remove a gun. At this point, she observed the victim leave the station wagon and run up Pond Street. She saw a girl get out of the car and run in the opposite direction. She observed the gunman shoot out the rear window of the station wagon and then fire toward the fleeing victim. The assailant then turned, and continued to shoot at the station wagon.

Boston police found the victim, lying in a pool of blood on Pond Street, approximately 110 feet from his automobile. The victim was removed by ambulance to Boston City Hospital, where he died as a result of shotgun wounds to his head. Three shotgun shells and a woman's pocketbook were found near the damaged station wagon. It was later established that the shells were fired from the defendant's gun.

Less than one hour after the Pond Street shooting, Boston police officers responded to a report of shots being fired in the area of Dorchester and West Second Streets near O'Leary's Pub in South Boston. When the officers arrived, their attention was drawn to three men standing outside a maroon Mercury automobile. They saw one man, the defendant, bend into the vehicle through the open door on the driver's side. When the officers approached the automobile, they observed a sawed-off shotgun on the floor of the passenger's side of the automobile, and immediately placed the defendant and the other two men under arrest. The officers observed that the registration plate of the automobile was bent down so the numbers could not be seen. Further investigation revealed that both the shotgun and the automobile belonged to the defendant.

1. *Motion for continuance.* The court appointed defense counsel for the defendant on December 4, 1984. The case was continued several times. In the interim, defense counsel was preparing a rape case for trial and received a protective order from the judge presiding over the rape case on October 17, 1985, holding the lawyer harmless on all other matters to allow him to prepare exclusively for trial of the rape case. On November 4, however, that judge granted counsel's motion to withdraw from the rape case, thereby terminating the protective order. On October 17, a lobby conference on the murder case was held, and a trial date was set for November 18, 1985, before another judge in the Superior Court. On November 18, defense counsel represented that he was not prepared for trial, and moved for a writ of protection and a continuance. The judge denied the motions. The defendant petitioned this court under G. L. c. 211, § 3 (1986 ed.), but was denied relief by a single justice. The jury were empanelled the following day.

The defendant argues on appeal that the judge committed error by denying his motions for a writ of protection and a continuance. The decision whether to grant a motion to continue lies within the sound discretion of the judge, and will not be disturbed unless there is clear abuse of discretion. *Commonwealth* v. *Watkins*, 375 Mass. 472, 490 (1978). There was no abuse of discretion. The judge's decision was supported by his findings that the defendant had been incarcerated, awaiting trial of this case for well over one year, and that it was a simple case to prepare and to try. Moreover, the record does not support the defendant's contention that the denial of his motion for continuance prejudiced his case. This is not a situation where the decision operated to impair the defendant's "constitutional right to have counsel who has had reasonable opportunity to prepare a defense." *Commonwealth* v. *Appleby*, 389 Mass. 359, 370, cert. denied, 464 U.S. 941 (1983), quoting *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 51 (1976). There was no error.

2. *Motion to suppress.* The defendant objects to the trial judge's decision denying the defendant's motion to suppress certain items seized from his automobile pursuant to a valid

search warrant. The defendant concedes that, because the police had the authority to search the vehicle at the scene once the officer observed the sawed-off shotgun in plain view, the police were justified in towing the automobile to the station to complete the search. See *Commonwealth* v. *Markou*, 391 Mass. 27, 30 (1984); *Commonwealth* v. *King*, 389 Mass. 233, 247 (1983). The defendant's only complaint is that the police should have conducted an immediate inventory search of the vehicle instead of waiting until the next day to obtain a warrant. Because of this delay, the defendant claims, there was no remaining authority to conduct the search.

The defendant overlooks in his claim our long standing view that the better policy is to obtain a warrant, when it is practical to do so, even where grounds exist for a warrantless search. See *Commonwealth* v. *Wilbur*, 353 Mass. 376, 381 (1967), cert. denied, 390 U.S. 1010 (1968) (use of search warrants is desirable to protect important individual rights). Quite to the contrary of finding error, we commend the officer for his diligence in first obtaining a warrant before conducting further a search of the automobile.

3. *Testimony on the termination of the interrogation.* Officer Tinlin of the Boston police department questioned the defendant after his arrest.[1] The defendant provided the officer with certain information, and then stated, "I don't think I want to say any more." Consequently, and quite properly, the officer terminated the interview.

After a voir dire hearing, the judge ruled that the testimony was admissible. The officer then related to the jury the entire interrogation, including the defendant's last statement. At this point, defense counsel moved for a mistrial, although counsel said nothing during the voir dire when the officer quoted the defendant. The judge denied the motion. On cross-examination, defense counsel questioned Officer Tinlin concerning the fact that the interview with the defendant was not tape recorded.

---

[1] The defendant does not contest that the initial waiver of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), was knowingly, intelligently, and voluntarily made.

On redirect examination, the prosecutor asked: "Will you tell the jury, sir, why you didn't tape it?" The officer responded: "He exercised his right to remain silent so I terminated the conversation." Defense counsel renewed his motion for mistrial. The motion was denied. The defendant appeals, claiming that the testimony concerning the termination of the interview was an improper and prejudicial comment on the defendant's exercise of his right against self-incrimination.

There should be no comments on the defendant's claim of his rights under the Fifth Amendment to the United States Constitution. Where such statements have been presented to the jury in order to prejudice the defendant for exercising his rights, reversible error has been found. See *Doyle* v. *Ohio*, 426 U.S. 610, 617-618 (1976); *Commonwealth* v. *Cobb*, 374 Mass. 514, 520 (1978). Here, however, Officer Tinlin's testimony on direct examination concerning the defendant's request to end the interrogation was introduced in the context of the entire conversation, and was admitted so as not to leave the jury wondering why the interview ended abruptly. The officer's testimony on redirect examination was properly admitted in response to the inferences left by defense counsel on cross-examination. Cf. *United States* v. *Robinson*,      U.S.      ,      (1988) (108 S. Ct. 864, 869-870 [1988]). At no time did the Commonwealth use the defendant's statement as evidence of his guilt, or to impeach an explanation subsequently offered at trial. *Commonwealth* v. *Ferreira*, 381 Mass. 306, 314 (1980). There was no error.

4. *The prosecutor's closing argument.* The defendant argues that the cumulative effect of allegedly improper remarks in the prosecutor's closing argument warrants reversal.[2] Upon review of the alleged errors, we disagree.

We comment, however, on the prosecutor's use of rhetorical questions in his closing argument to the jury. In reference to the shotgun sawed off at the barrel and the stockhandle, the prosecutor asked the jury, "Why? Why does a person do that?"

---

[2] We note that the defendant did not request curative instructions on any of the comments that he now claims prejudiced him.

In the context of the entire closing argument, the brief comment was not improper. Moreover, the judge clearly and forcefully instructed the jury on the Commonwealth's burden of proof, explaining that the defendant "has absolutely no obligation or no burden to introduce any evidence, whatsoever." As a general rule, however, rhetorical questions should not be used in closing argument where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant. See *United States* v. *Skandier*, 758 F.2d 43, 45 (1st Cir. 1985).

5. *Relief under G. L. c. 278, § 33E*. The defendant requests that the court exercise its extraordinary power under G. L. c. 278, § 33E, to grant a new trial, or to reduce the verdict to murder in the second degree. His claim for relief is premised on a combination of alleged trial errors, the character of the defendant, and evidence of the defendant's intoxication at the time of the crime.[3] We hold that the verdict of murder in the first degree, reached by the jury was consonant with justice, and see no basis for granting relief.

*Judgments affirmed.*

---

[3] The jury in this case received instructions on murder in the first degree and murder in the second degree as well as manslaughter. The jury also were instructed on the effects of intoxication on the element of premeditation in murder in the first degree.