NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1234

COMMONWEALTH

vs.

CRYSTAL MONSANTO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of three counts of aggravated rape of a child in violation of G. L. c. 265, § 23A.  On appeal, she claims a variety of errors in the prosecutor's closing argument.  We affirm.

The defendant claims the prosecutor improperly asked in closing what motive would the victim have to lie about the allegations, and improperly employed rhetorical questions that had the effect of shifting the burden of proof to the defendant. In part, the prosecutor argued as follows:

"If she didn't remember something, she said so.  She said I don't remember[;] I don't recall.  And, yes, there were some peripheral details she did not remember, what people were wearing, what she ate for dinner after she was raped.  But she remembered the central details.

"How would it be convenient to sit here and say I don't remember the details?  If she was making this up, wouldn't she just make up those details?  No, because she was here to tell you what happened and to testify as to what she remembered."

". . .

"I ask you to consider why would [the victim] make this up?  What motive would she have to lie?  You heard she was close to the [d]efendant.  She looked up to her.  She visited her often.

"You heard she was struggling with her mom.  Why would she make this up?  What's she hoping to gain?  Is it attention?  What kind of attention is she hoping to get by saying that [a family member] repeatedly raped her?

"Does she seem like someone who's craving attention?  She told you she wasn't popular, had no interest in being popular.  She read books.  She liked reading apps.  She tried to do well in school."

Relative to these claims, the defendant objected to the argument that the victim had no motive to lie, but she lodged no objection to the prosecutor's use of rhetorical questions.  In this posture, we will evaluate the former for the existence of error and any resulting prejudice.  See Commonwealth v. Beaudry, 445 Mass. 577, 584-585 (2005).  As for the latter, we review for error, and if any, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

"A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair

2

inferences drawn from it, and are not based on the prosecutor's personal beliefs. . . . When credibility is an issue before the jury, 'it is certainly proper for counsel to argue from the evidence why a witness should be believed.'" Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999), quoting Commonwealth v. Raymond, 424 Mass. 382, 391 (1997).

Here, the entire premise of defense counsel's closing argument was that the victim was not credible. Defense counsel stressed that the victim lacked credibility because her testimony was uncorroborated, she had made prior inconsistent statements, and that she could not recall details from the time of the sexual abuse. In light of this, the prosecutor's argument that the victim had no motive to lie was entirely proper. See Commonwealth v. Polk, 462 Mass. 23, 40 (2012); Commonwealth v. Chavis, 415 Mass. 703, 714 n.15 (1993). There was no error.

Contrary to the defendant's unpreserved claim, the prosecutor did not improperly employ rhetorical questions in his argument. In general, rhetorical questions can become problematic "where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant." Commonwealth v. Habarek, 402 Mass. 105, 111 (1988). Unlike in Habarek, where the questions suggested that the defendant had to

explain why he did not possess an intent to kill, id. at 110-111, here the prosecutor's rhetorical questions were directed at the victim's state of mind or her demeanor and were made in response to defense counsel's suggestions that the victim had fabricated her testimony. See Commonwealth v. Miranda, 458 Mass. 100, 115-116 (2010); Freeman, 430 Mass. at 118-119. The questions did not shift the burden of proof to the defendant. Accordingly, there was no error, and thus, no risk that justice miscarried.

The defendant also claims the prosecutor misstated the evidence and referred to facts not in evidence in his closing argument. Specifically, the defendant claims this occurred in reference to the "purple Victoria's Secret bag." The prosecutor argued as follows:

> "[The victim] said the [d]efendant kept the sex toys in a pink Victoria's Secret bag. She didn't say there was writing on it. She said it was a pink Victoria's Secret bag. Ask yourself, does every bag have a brand on it? Does Victoria's Secret sell more than one kind of bag? You come in here with your common sense, use that common sense, your life experiences.

> "So, she was asked about that bag, and she was shown this picture. Is this the bag you're talking about? And she said no. That's the [d]efendant's makeup bag. And when you're able to see inside the bag, lo and behold, it was a makeup bag.

> "So, where is the pink bag [the victim] is talking about? Well, as the detective said, people throw out their bags. Isn't it possible that the [d]efendant found a new

4

place to store her sex toys when she moved to her new home in Lowell?"

To this portion of the argument, the defendant objected on the ground that the photograph shown to the victim was never marked for identification, and it was never established that the victim identified the bag as the defendant's makeup bag, as the photograph was offered through a police detective. We need not decide whether this objection preserved all the current appellate claims because they are simply without merit.

The prosecutor's comment that the defendant kept her sex toys in a "pink Victoria's Secret bag" was rooted in the evidence and commonsense inferences, which the jury were entitled to draw. The victim testified that the defendant kept her sex toys in a purple bag in the living room. The investigating detective testified that the victim told him that the defendant kept her sex toys in a "purple or pink" Victoria's Secret bag. The detective also testified that he recovered from the defendant's Lowell residence a purple Victoria's Secret bag, which contained makeup products. The prosecutor was not required to accept that the bag found in Lowell was the same bag as the one that held the defendant's sex toys in Dorchester where the rapes occurred years earlier. See Commonwealth v. Parker, 481 Mass. 69, 74 (2018). Also, even assuming the bag was purple and not pink, that fact was entirely collateral to

5

whether the defendant raped the victim and was not prejudicial to the defendant.  See Commonwealth v. Jones, 432 Mass. 623, 629 (2000) (prosecutor's erroneous remark was aimed only at collateral issue, not heart of defendant's case).

Furthermore, the prosecutor did not mischaracterize the evidence in suggesting that the photograph that defense counsel showed the victim was the defendant's makeup bag.  When defense counsel showed the victim the photograph and asked her whether it depicted the bag that contained the defendant's sex toys, the victim responded, "No. . . .  That was [the defendant's] makeup bag."  Although the photograph was neither marked for identification nor entered in evidence, the victim's testimony on the matter provided a proper evidentiary basis for the argument.[1]

Similarly, the prosecutor's suggestion that the defendant had "throw[n] out" the bag that she had kept her sex toys in or had "found a new place to store her sex toys when she moved to her new home in Lowell" was also grounded in the evidence.  The victim testified that the rapes and the use of the sex toys

---

[1] Also contrary to the defendant's claim, the prosecutor did not ask the jury to speculate when he asked, "Does Victoria's Secret sell more than one kind of bag?"  Indeed, he expressly asked the jury to employ their "common sense and "life experiences" to evaluate the evidence.  This was entirely proper.  See Commonwealth v. Salazar, 481 Mass. 105, 117 (2018).

6

occurred in Dorchester, and that the defendant later moved to Lowell. The detective testified that the bag found in the Lowell residence contained makeup products, not sex toys, and that people throw out bags. Thus, the argument was based on the evidence and the fair inferences to be drawn therefrom. It was also a fair response to defense counsel's argument that the victim was not credible because she had changed her story about the contents of the bag. See Commonwealth v. Witkowski, 487 Mass. 675, 686 (2021).

The defendant also claims, for the first time on appeal, that the prosecutor vouched for the victim's credibility, referred to matters outside the record, and made improper appeals to sympathy in his closing argument. In this posture, we review for error, and if any, whether it created a substantial risk of a miscarriage of justice. See Randolph, 438 Mass. at 297.

The overarching theme of defense counsel's closing argument was an attack on the victim's credibility. In particular, he argued that the victim had made other allegations that the defendant had sexually assaulted her but, despite meetings with the prosecution team to discuss her testimony, the victim could not remember what had occurred or she told inconsistent stories.

Because of this, defense counsel urged the jury to discredit the victim and her testimony.

In response, the prosecutor argued as follows:

"If [the victim] were making this up, if she were trying to get the [d]efendant in trouble for some reason, would she really admit to not remembering that?

"When she met with the prosecution team and it was brought up to her, wouldn't she then suddenly remember, oh, yeah, that happened also?  But she didn't because she's not here to get someone in trouble.  She's here to tell you what happened.  She's here to tell you what she remembers.

"Ladies and gentlemen, if you believe [the victim], that is proof beyond a reasonable doubt."

The prosecutor's argument was a proper, evidence-based response to defense counsel's challenge to the victim's credibility.  See Commonwealth v. Gonsalves, 488 Mass. 827, 842 (2022).  Contrary to the defendant's claim, the reference to the out-of-court meeting did not inject the prosecutor's personal knowledge of the victim's credibility.  In fact, it was defense counsel who first raised the meeting and put the matter before the jury.  When he cross-examined the victim, defense counsel elicited that she had met with the prosecution team, and that she was unable to recall a prior allegation.  Also, defense counsel raised those matters in his closing argument.  See Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989).  Presenting an alterative explanation for the inconsistencies in the victim's testimony was not vouching.  Contrast Commonwealth v.

8

Nicholson, 20 Mass. App. Ct. 9, 17-18 (1985) (improper to state "in my years of experience, [she] is one of the most truthful, sincere, candid witnesses that I have seen in any courtroom").

The defendant also claims that the prosecutor improperly suggested that the victim was forced to "console and comfort the person who ha[d] just raped her" on "numerous occasions" where the evidence suggested it had occurred on only one occasion. We disagree. Specifically, the prosecuter argued:

> "On numerous occasions [the defendant] would take [the victim] into the living room, undress, and make [the victim] rub her vagina and clitoris. Often times, afterwards the [d]efendant would cry and say she was worried [the victim] would hate her. And [the victim] would have to console and comfort the person who had just raped her."

The victim testified that the defendant made the victim touch her, that the defendant did not want the victim to hate her, and that the victim "had to sit there and comfort" the defendant. The victim further stated these touchings occurred on "multiple" occasions, and importantly, that each time was "similar." Based on this record evidence, it was proper for the prosecutor to argue that the touchings, in conjunction with the postassault consolations, occurred on numerous occasions. It was not an appeal to sympathy. See Commonwealth v. Barbosa, 477 Mass. 658, 669-670 (2017).

9

The defendant further claims that the prosecutor's argument vouched for the victim's credibility and played on the sympathies of the jury when he discussed the victim's delayed disclosure of the rapes:

"You heard when [the defendant] would beat [the victim], what would other people in the house do? Nothing. They would ask the [d]efendant, oh, what did [the victim] do? [The defendant] acted with impunity. No one else there cared. That's why [the defendant] felt free to rape [the victim] in that home again and again."

". . .

"As I said, what did other people in the house do when she did? Nothing. They walked on by when the [d]efendant used that corporal punishment."

Again, this argument was grounded in the evidence and the fair inferences to be drawn from it. The victim testified that in addition to the sexual assault, the defendant would also yell at her, and beat her, while other family members were home in their respective bedrooms. One form of the defendant's punishment was to make the victim do "wall squats." If a family member witnessed this and inquired, the defendant would tell them the victim had been misbehaving.

Based on this evidence, and the reasonable inferences to be drawn from it, the prosecutor could properly argue that the people living in or visiting the home knew the defendant had been physically abusing the victim, and they did not come to her

10

aid.[2]  Because those present arguably knew and did nothing, the prosecutor properly suggested that the defendant felt empowered to sexually assault the victim and to do so with impunity.  It was also permissible for the prosecutor use this evidence to explain the context that surrounded the sexual assaults, and despite the unseemly nature of the physical abuse, it was not unnecessarily inflammatory so as to provoke sympathy or vouch for the victim.

We also reject the defendant's claim that the prosecutor impermissibly vouched for the victim's credibility and appealed to sympathy when he stated:

> "[The victim] had nobody in that house to go to.  And because of her strained relationship with her mom[,] she had nobody at her own home to go to.  She was alone, and the [d]efendant took advantage of that, to rape and abuse her.  She told her it's okay, and she pressured her.
>
> "[The victim] used the phrase 'peer pressure,' but the [d]efendant is not her peer.  She is [eighteen] years older than her.  She was an adult with the authority and ability to punish her.  And [the victim] was alone.  She was a young girl unable to consent.  And the [d]efendant took advantage of that authority to rape [the victim] again and again and again."

The entirety of this passage was supported by the evidence regarding the once-close, family relationship that the victim

---

[2] This inference of knowledge is further buttressed by the fact that both entrances to the living room were merely covered by blankets, which would not have insulated the residence's other occupants from the noise generated by the abuse.

enjoyed with the defendant.  That relationship, however, changed when the victim was fourteen or fifteen years old and the defendant's sexual assaults began.  The victim also testified that she did not disclose the abuse to her mother due to their strained relationship.  Although she feared the defendant, the victim felt that she was the only person close to her and she "had nobody to tell."  From this evidence, the prosecutor properly argued that the defendant took advantage of the familiar relationship she had with the victim, and of the victim's isolation from her mother, and repeatedly raped her. See Commonwealth v. Sun, 490 Mass. 196, 209 (2022).

Finally, we have examined all the challenged arguments in the context of the entire closing, the evidence introduced at trial, and the judge's proper and clear jury instructions.  See Commonwealth v. Wilkerson, 486 Mass. 159, 180 (2020).  In particular, on four separate occasions, the judge instructed the jury that closing arguments are not evidence.  She specifically told the jury that "the Commonwealth does not have any greater insight or knowledge into the credibility of the witnesses who testified before you.  It is for you and you alone to determine the credibility of the witnesses."  The judge added that it was the jury's memory of the testimony that controlled, and they must reach a verdict without passion or prejudice.  The judge

12

also instructed the jury that the burden of proof remained with the prosecution and "never shifts."  See Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) ("judge's careful and clear instructions concerning the role of the closing arguments and how to determine the credibility of witnesses adequately offset any semblance of impropriety").  There was no error,[3] and thus, no risk that justice miscarried.

Judgments affirmed.

By the Court (Meade, Desmond & D'Angelo, JJ.[4]),

Paul Little

Clerk

Entered:  March 7, 2025.

---

[3] Having found no error in the prosecutor's closing argument, we need not address the defendant's additional claim of cumulative error. DB35-36.

[4] The panelists are listed in order of seniority.

13